OHIO CASUALTY INSURANCE COMPANY, Appellant,

v.

UNITED SOUTHERN ASSURANCE COMPANY et al., Appellees;

Crew, Admr., Appellant.

[Cite as *Ohio Cas. Ins. Co. v. United S. Assur. Co.* (1993), 85 Ohio App.3d 529.]

Court of Appeals of Ohio,
Clark County.

Nos. 2912, 2957 and 2961.

Decided March 30, 1993.

*Dianne F. Marx*, for appellant, Ohio Casualty Insurance Company.

*Robin R. Freeman* and *Richard F. Heil, Jr.*, for appellee, United Southern Assurance Company.

*Thomas J. Veskauf*, for appellee, Rollins Moving and Storage Company, Inc.

*Thomas E. Dysinger* and *Bryan K. Stewart*, for appellant, Shurley W. Crew.

WOLFF, Judge.

The Ohio Casualty Insurance Company ("OCI") appeals from a summary judgment rendered in favor of United Southern Assurance Company ("USA") which determined that OCI was required to indemnify and defend its insured, Rollins Moving & Storage Company ("Rollins"), in a wrongful death action.

This appeal originated in an action for a declaratory judgment brought by OCI. OCI sought a declaration that it was not required to provide primary insurance coverage for a fatal motor vehicle accident that occurred involving Alva Green, USA'S insured, and the decedent, Robert Crew. The accident is the subject of a wrongful death action unrelated to this appeal.

On November 9, 1990, Alva Green ("Green") was involved in a collision while driving a tractor-trailer (the "truck"). Green's wife Grenee owned the truck and leased it to Rollins. The lease agreement specified that Rollins would have exclusive possession, control, and complete authority for the truck's operation. As was required by the lease, Green carried "non-trucking" insurance which was provided by USA. The USA policy provided that USA would cover the truck while it was used for purposes other than trucking. The lease also authorized

Green's personal use of the truck when the truck was not being used in Rollins's business.

Rollins carried comprehensive liability insurance through OCI. The OCI policy provided coverage while the truck was used "exclusively in [Rollins's] business as a 'trucker.'"

Green lived in Columbus, Ohio. On the day of the accident, Green picked up his first load of the day in Columbus. He dropped the load off at Navistar in Springfield, Ohio, picked up a new load from Rollins's Springfield facility and proceeded to Indiana. After delivering the load to Indiana, he returned to the Springfield facility where he dropped off the trailer and collected his paycheck. He then drove home to Columbus without the trailer, a practice called "bob tailing." The fatal accident occurred en route from Springfield to Columbus. At the time of the accident, the truck bore Rollins's Interstate Commerce Commission ("ICC") registration placards.

OCI brought a declaratory judgment action, naming as defendants USA, Rollins, and the Greens. OCI sought a declaration that it was not required to provide primary insurance coverage in the wrongful death action because Alva Green was not acting within the scope of employment at the time of the accident. OCI maintained that USA, as the provider of Green's "non-trucking" insurance, was responsible for primary insurance coverage and was required to defend and indemnify the Greens in the wrongful death action. USA counterclaimed that because Green was operating within the scope of his employment at the time of the accident, OCI had the primary obligation of coverage and defense.

Shurley Crew, in the capacity as administrator of the estate of Robert Crew, filed a motion to intervene in the declaratory judgment action. Crew sought to intervene on the grounds that the outcome of the declaratory judgment could adversely affect the estate by limiting the potential sources of recovery in the wrongful death action. The trial court sustained the motion, but later vacated the judgment that had sustained the motion to intervene.

OCI and USA moved for summary judgment. The trial court granted leave to Crew to file an *amicus* brief to respond to the motions. The trial court sustained USA's summary judgment motion on the basis that Alva Green was operating within the scope of employment at the time of the collision and thus OCI was primarily responsible for coverage in the wrongful death action. The court further found that the policies were mutually exclusive and provided no "overlapping coverage."

OCI appeals from the summary judgment rendered in USA's favor. Shurley Crew appeals the vacation of the judgment which sustained Crew's motion to intervene. Pursuant to motion, the appeals were consolidated. OCI has raised

two assignments of error and Crew has raised four. In order to facilitate our analysis, we first consider OCI's appeal, addressing first its second assignment of error.

### Second Assignment of Error (No. 2957)

"The trial court erred in holding that the ICC placards displayed in the tractor at the time of the accident dictate the rights and responsibilities between the two insurance companies as to which policy is primary and which is excess."

In holding that Green was operating within the scope of his employment at the time of the accident, the trial court relied in part upon *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv., Inc.* (1991), 58 Ohio St.3d 261, 569 N.E.2d 1049. In *Wyckoff,* the Ohio Supreme Court created an irrebuttable presumption establishing the liability of a common carrier-lessee for the actions of an owner-driver of a truck displaying the carrier-lessee's ICC placards. The court held in its syllabus that:

"In tort causes of action involving leased vehicles of interstate motor carriers, primary liability shall be determined with regard to Interstate Commerce Commission regulations rather than the common law doctrines of *respondeat superior,* master-servant, independent contractor and the like. (*Thornberry v. Oyler Bros., Inc.* [1955], 164 Ohio St. 395, 58 O.O. 189, 131 N.E.2d 383, overruled to the extent inconsistent herewith.)

"In order for liability to attach on an interstate carrier-lessee under Interstate Commerce Commission regulations, it must be established that, at the time the cause of action arose, (1) a lease of the vehicle was in effect and (2) the vehicle displayed the carrier-lessee's placard listing its I.C.C. numbers. (Section 1057.12, Title 49, C.F.R. applied.)

"Section 1057.12(c)(1), Title 49, C.F.R. creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the I.C.C. identification numbers of the carrier-lessee."

This irrebuttable presumption is also referred to as the doctrine of statutory employment. *Id.,* 58 Ohio St.3d at 265, 569 N.E.2d at 1053. The liability attaches even if the driver embarks on an undertaking of his own while displaying the carrier-lessee's ICC placards. *Id.*

*Wyckoff* explained that the public policy behind the presumption was twofold: to curtail abuses by ICC-licensed common carriers which frequently used leased or interchanged vehicles to avoid safety regulations governing equipment and drivers, and to prevent public confusion as to who was financially responsible for accidents caused by ICC licensed carriers. *Id.,* 58 Ohio St.3d at 264, 569 N.E.2d at 1052.

In this case, the trial court recognized that *Wyckoff* dealt with establishing the liability of a carrier-lessee vis-à-vis the public at large, without necessarily considering which insurance company was responsible for providing primary insurance coverage. Notwithstanding that *Wyckoff* did not consider the issue of insurance coverage, the trial court concluded that the presumption would likewise apply to disputes between insurance companies. The court explained that "logically the ICC Endorsement should create the same result when the dispute is between the insurer of the carrier-lessee and the insurer of the owner of the leased vehicle, namely that the insurer of the carrier-lessee provides coverage and a defense."

OCI argues that *Wyckoff* is inapplicable to this case because it was not intended to fix the rights and liabilities between disputing insurance companies. Rather, OCI maintains that *Wyckoff* merely intended to establish the liability of the carrier-lessee for the narrow purpose of protecting the public from "becoming entangled in trip leases, agency law, and dispatch orders after a motor vehicle accident occurs between a tractor-trailer and an automobile." While we agree that *Wyckoff* was limited to determining the liability of a carrier-lessee rather than determining which insurance company was responsible for coverage, we do not agree that *Wyckoff* cannot be extended to determine the latter issue as well.

If the doctrine of statutory employment irrefutably establishes the liability of the carrier-lessee, then the doctrine should also establish that the carrier-lessee's insurance company is responsible for coverage. To hold that Rollins is liable because Green's truck displayed Rollins's ICC placards at the time of the collision, yet also hold that Rollins's insurance is not triggered despite Rollins's statutory liability, yields an inconsistent result. Moreover, extending *Wyckoff* has the added benefit of clearly defining insurance carrier responsibility.

The second assignment is overruled.

### First Assignment of Error (No. 2957)

"The trial court erred in finding that Alva L. Green was operating within the scope of his employment at the time of the accident and that the Ohio Casualty policy was primary since it was undisputed that prior to the accident the driver returned to the terminal from which the haul was assigned, a trailer was dropped off at the terminal by the driver and Alva L. Green was en route to his residence with no work scheduled the next day."

Both OCI and USA cite *St. Paul Fire & Marine Ins. Co. Frankart* (1977), 69 Ill.2d 209, 13 Ill.Dec. 31, 370 N.E.2d 1058, in support of their respective positions. In *Frankart,* Wilson Freight Company, an interstate carrier licensed with the ICC, leased a truck from Frankart. Frankart maintained his personal residence in Findlay, Ohio and frequently received assignments from Wilson's Cleveland,

Ohio terminal. Frankart received a dispatch order from the Cleveland terminal to pick up a load in Coatesville, Pennsylvania. He delivered the load to Tulsa, Oklahoma and then drove to Wilson's Granite City, Illinois terminal. While in Granite City, Frankart took his name off the availability list and drove to his home with an empty trailer. Frankart was involved in an accident in Peoria, Illinois while en route to his Findlay residence.

The issue before the Illinois Supreme Court was whether Frankart was in the business of Wilson at the time of the accident. The court held that:

"It is the nature of Wilson's business that its driver-owners will be relieved of the load at a point of delivery, and that, unless another load can be picked up on the return trip, the owner-drivers must make their return trip pulling an empty trailer. As Wilson's Vice President conceded, the original assignment does not terminate at the point of delivery. We find that it continues at least until the owner-driver returns to the point where the haul originated (Coatesville, Pennsylvania) to the terminal from which the haul was assigned (Cleveland, Ohio), or to the owner-driver's home terminal from which he customarily obtained his next assignment (Findlay, Ohio). * * * We find as a matter of law, that during Frankart's return trip to his home in Findlay, Ohio, his tractor-trailer continued to be used in Wilson's business." *Id.,* 69 Ill.2d at 218–219, 13 Ill.Dec. at 35, 370 N.E.2d at 1062.

*Frankart* thus devised three ways for determining the point at which the employment relationship between a carrier-lessee and an owner-driver terminates.

In addition to relying on *Wyckoff,* the trial court also relied on *Frankart, supra,* as independent authority to support the conclusion that Green was acting within the scope of employment at the time of the collision. The trial court held that:

"On the day of this collision Alva Green was dispatched from his home in Columbus to pick up a trailer in Columbus to be delivered in Springfield and then proceed in Indiana and then return to Springfield. The trip home to Columbus was actually a return to the point of dispatch."

We need not consider whether the trial court properly concluded under *Frankart* that Green was acting within the scope of his employment at the time of the collision. We have already determined, pursuant to *Wyckoff's* irrebuttable presumption, that the trial court properly ruled that Green was acting within the scope of employment because he was driving a truck that displayed Rollins' ICC placards. Because extension of *Wyckoff* independently resolves the controversy, it is unnecessary to determine whether the trial court applied *Frankart* properly.

The first assignment is overruled as moot.  See App.R. 12(A)(1)(c).

We now consider Crew's appeal.

### First Assignment of Error (Nos. 2912 & 2961)

"The trial court erred in not allowing the intervention of the administrator in this action."

### Second Assignment of Error (Nos. 2912 & 2961)

"The trial court lacks subject matter jurisdiction to continue the declaratory judgment action without the presence of the administrator."

In these assignments, Crew argues that the trial court erred by refusing to allow intervention in the declaratory judgment action.  Crew also argues that the trial court lacked subject matter jurisdiction to hear the declaratory judgment action because such intervention was essential to the action.

It is unnecessary for us to consider the merits of these arguments.  Crew was permitted to present arguments in both the trial court and this court.  Moreover, counsel conceded at oral argument that Crew has thus not been prejudiced by the inability to intervene.

The first and second assignments are overruled.

### Third Assignment of Error (No. 2961)

"The trial court erred in holding that appellee USA is not required to provided a defense or coverage in the wrongful death action."

Crew's argument in support of this assignment is essentially that the evidence before the trial court established that Green was not acting within the scope of his employment at the time of the fatal collision, and that the trial court misapplied *Frankart*.

Both policies contain the following language:

"5.  OTHER INSURANCE–PRIMARY AND EXCESS INSURANCE PROVISIONS

"a.  This Coverage Form's Liability Coverage is primary for any covered 'auto' while hired or borrowed by you and used exclusively in your business as a 'trucker' and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered 'auto' while hired or borrowed from you by another 'trucker.'  However, while a covered 'auto' which is a 'trailer' is connected to a power unit, this Coverage Form's Liability Coverage is:

"(1) On the same basis, primary or excess, as for the power unit if the power unit is a covered 'auto.'

"(2) Excess if the power unit is not a covered 'auto.'

"b. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered 'auto.'

"c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered 'auto' you own and excess insurance for any covered 'auto' you don't own."

The USA policy also contained the following "non-trucking" use provision:

"LIABILITY COVERAGE for a covered 'auto' described in the Schedule or in the Declarations is changed as follows:

"1. The following exclusions are added: This insurance does not apply to:

"a. A covered 'auto' while used to carry property in any business.

"b. A covered 'auto' while used in the business of anyone to whom the 'auto' is rented.

"2. WHO IS AN INSURED does not include anyone engaged in the business of transporting property by 'auto' for hire who is liable for your conduct."

Crew recognizes that the non-trucking provision obviates USA's responsibility to provide coverage and a defense if Green was not acting within the scope of his employment at the time of the accident. If, however, *Wyckoff* serves to establish that Green was acting within the scope of his employment, and thus fix OCI's responsibility to provide coverage and a defense, *Wyckoff* must likewise serve to excuse USA where its responsibility is limited to a nonbusiness use of the tractor.

The third assignment is overruled.

Fourth Assignment of Error (No. 2961)

"The trial court erred in not holding that appellant Ohio Casualty and appellee USA should both be required to provide primary insurance coverage for the wrongful death action on a pro rata basis."

Crew's argument that both insurers are primarily responsible is essentially based on the contentions that (1) Green was not acting within the scope of his employment at the time of the collision, making USA primarily responsible, and (2) OCI is also primarily responsible because of the ICC endorsement to the OCI policy, even though Green was not within the scope of his employment at the time of the collision. Attached to the OCI policy was the following ICC endorsement:

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company agrees to pay, within the limits of liability

prescribed herein, any final judgment recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others * * * resulting from negligence in the operation, maintenance, or use of motor vehicles under certificate of permit issued to the insured by the Interstate Commerce Commission, * * * regardless of whether or not such negligence occurs on any route or in any territory authorized by the Interstate Commerce Commission to be served by the insured or elsewhere.

"It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon, or of this endorsement, by the insured, shall relieve the Company from liability or from the payment of any final judgment, irrespective of the financial responsibility of lack thereof or insolvency or bankruptcy of the insured.  * * *"

We have disposed of Crew's first contention adversely to Crew.  We need not address Crew's second contention based upon our disposition of OCI's second assignment of error.

Because only OCI is primarily responsible to provide coverage and defense, the fourth assignment is overruled.  The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and FREDERICK N. YOUNG, JJ., concur.