CANAL INSURANCE COMPANY, Appellee,

v.

BROGAN et al., Appellees; St. Paul Fire &
Marine Insurance Company, Appellant.

[Cite as *Canal Ins. Co. v. Brogan* (1994), 93 Ohio App.3d 765.]

Court of Appeals of Ohio,
Franklin County.

Nos. 93AP–1135, 93AP–1136 and 93AP–1138.

Decided March 24, 1994.

*Tsitouris & Gerrity* and *Chris T. Tsitouris,* for Canal Insurance Company.

*Day, Cook & Gallagher, David L. Day* and *Carl A. Anthony,* for James G. Brogan.

*Lane, Alton & Horst* and *Thomas A. Dillon,* for St. Paul Fire and Marine Insurance Company.

*Roetzel & Andress, John P. Mazza* and *Douglas M. Kennedy,* for Tri–State Expedited Services, Inc.

*Joseph J. Murphy* and *John P. McDonough,* for Rex H. Rowand.

*Emens, Kegler, Brown, Hill & Ritter* and *Stephen E. Chappelear,* for James Hughes.

---

BOWMAN, Judge.

In November 1990, James G. Brogan, an independent trucker, entered into a lease agreement with Tri–State Expedited Services, Inc. ("Tri–State"), a trucking company which engages independent contractors to provide trucking services for other companies. Under the agreement, Brogan promised to lease his truck to Tri–State, furnish transportation services to Tri–State using the truck, and indemnify Tri–State for liability for property damage and personal injury caused by Brogan. Tri–State was insured by St. Paul Fire and Marine Insurance Company ("St. Paul") under a policy providing coverage for vehicles leased by Tri–State. In addition, Brogan held his own policy with Canal Insurance Company ("Canal").

In July 1991, Brogan, who lives in Salem, Ohio, was engaged by Tri–State to pick up a load in Malvern, Ohio, and deliver it to Muncie, Indiana. After making the delivery, Brogan checked with Tri–State for further assignments, and, there being none, began the return trip to Salem with an empty truck. En route, Brogan was involved in a collision on I–270 in Franklin County, which resulted in the injury of Rex Rowand and Walter Hughes. Rowand and Hughes each filed personal injury actions as a result of this accident. It is undisputed that, at the time of the accident, the cab door of Brogan's truck displayed Tri–State's placard listing Tri–State's Interstate Commerce Commission ("I.C.C.") numbers.

In January 1992, Canal initiated the instant action, seeking a declaratory judgment of the rights and liabilities of Canal, Brogan, Tri–State and St. Paul. Tri–State followed with a cross-claim against Brogan seeking indemnification and alleging breach of the lease agreement between Tri–State and Brogan. Brogan filed a cross-claim against St. Paul asserting St. Paul's liability and that St. Paul acted in bad faith in refusing to provide coverage for the accident. Finally, St.

Paul filed its own cross-claim against all other parties seeking a declaration that it had no duty to provide coverage to Brogan.

The matter was submitted to the trial court on depositions, admissions, answers to interrogatories and briefs, and the court rendered a decision in June 1993, finding the case of *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv., Inc.* (1991), 58 Ohio St.3d 261, 569 N.E.2d 1049, to be dispositive. Rejecting Tri–State's argument that Tri–State's lease agreement with Brogan was not in effect at the time of the accident, the court determined that Brogan's truck was displaying Tri–State's I.C.C. number at the time of the accident and that Tri–State was responsible for covering Brogan for his return trip. As a result, the court found St. Paul had the primary duty to provide coverage and to defend Brogan, but found no bad faith on the part of St. Paul in refusing to do so. The court also found that Canal was not required to defend or provide coverage to Brogan but that, because Brogan had agreed to indemnify Tri–State for damages in excess of the policy limit, Brogan was obligated to indemnify Tri–State for any damages in excess of the limits of Tri–State's policy with St. Paul.

St. Paul, Tri–State and Brogan have all appealed from the judgment of the trial court, and this court consolidated their appeals.

St. Paul asserts the following assignments of error:

"First Assignment of Error:

"The trial court erred in determining that Brogan was an employee of [Tri–State] at the time of the accident.

"Second Assignment of Error:

"The court erred in determining that St. Paul had primary insurance coverage and had a duty to defend.

"Third Assignment of Error:

"The court erred in determining that Canal Insurance Company is neither required to provide coverage [n]or to defend James Brogan.

"Fourth Assignment of Error:

"The trial court erred in determining that the co-defendant Brogan is responsible to indemnify [Tri–State] only for damages in excess of St. Paul's policy limits."

Tri–State assigns the following as error:

"Assignment of Error No. 1:

"The trial court erred in finding the 'lease' between Brogan and Tri–State to be in effect at the time of the accident.

"Assignment of Error No. 2:

"The trial court erred in determining that St. Paul Fire & Marine Insurance Company had primary insurance coverage for the loss and resulting claims.

"Assignment of Error No. 3:

"The trial court erred in finding that Canal Insurance Company provided no coverage for Brogan as to the subject accident.

"Assignment of Error No. 4:

"The court erred in finding that Brogan did not breach the lease and independent contractor agreement with Tri–State.

"Assignment of Error No. 5

"The trial court erred in finding that Brogan's duties to indemnify Tri–State did not commence until Tri–State's insurer's policy limits had been exhausted."

Brogan's appeal raises three assignments of error:

"Assignment of Error No. 1:

"The trial court erred in determining that Canal Insurance Company's policy of insurance did not provide coverage to James Brogan for the accident of July 20, 1991.

"a.   The trial court erred in determining that the bobtail endorsement was a part of the policy issued by Canal Insurance Company to James Brogan.

"b.   The trial court erred in determining that coverage for James Brogan under Canal Insurance Company's policy is excluded by the bobtail endorsement.

"Assignment of Error No. 2

"The trial court erred in determining the issues raised by James Brogan's cross-claim against St. Paul Fire & Marine Insurance Company for bad faith when that claim had been dismissed without prejudice by the agreed entry filed January 28, 1993.

"Assignment of Error No. 3:

"The trial court erred in determining that 'should Tri–State be compelled to pay any monies in excess of the policy limit to Rowand and Hughes as a result of the accident which occasioned this action, Brogan will be obligated to indemnify Tri–State for those losses,' when that claim had been dismissed without prejudice by the agreed entry filed January 28, 1993."

Before addressing these assignments of error, we will first consider the applicability of *Wyckoff* to the facts in this case.

*Wyckoff* contained the following syllabus law:

"1.  In tort causes of action involving leased vehicles of interstate motor carriers, primary liability shall be determined with regard to Interstate Commerce Commission regulations rather than the common-law doctrines of *respondeat superior*, master-servant, independent contractor and the like.  (*Thornberry v. Oyler Bros., Inc.* [1955], 164 Ohio St. 395, 58 O.O. 189, 131 N.E.2d 383, overruled to the extent inconsistent herewith.)

"2.  In order for liability to attach on an interstate carrier-lessee under Interstate Commerce Commission regulations, it must be established that, at the time the cause of action arose, (1) a lease of the vehicle was in effect and (2) the vehicle displayed the carrier-lessee's placard listing its I.C.C. numbers.  (Section 1057.12, Title 49, C.F.R., applied.)

"3.  Section 1057.12(c)(1), title 49, C.F.R. creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the I.C.C. identification numbers of the carrier-lessee."

In *Wyckoff*, Clinton Bell was driving a tractor-trailer rig owned by his employer, Wyckoff Trucking, when he was involved in an accident.  At the time of the accident, the truck was subject to a master lease between Wyckoff and C.J. Rogers Trucking Company, although Wyckoff and Rogers had agreed to permit the truck to be trip-leased by Wyckoff to other companies when Rogers did not need the truck, and Bell was authorized to trip-lease the truck on behalf of Wyckoff.  In a barrage of actions similar to the claims and counterclaims filed in the instant case, all of the parties and their insurers in *Wyckoff* sought a determination that each was not liable.

The Ohio Supreme Court applied I.C.C. regulations in determining that only two essential issues were pertinent to the various claims.  First, the court held that the I.C.C. regulations create an irrebuttable presumption of an employment relationship between a carrier-lessee and a driver of a vehicle displaying the carrier-lessee's I.C.C. placards, referring to this presumption as the "doctrine of statutory employment."  *Id.*, 58 Ohio St.3d at 265, 569 N.E.2d at 1053.  Second, the court held that, where the I.C.C. placards are being displayed and the lease is still in effect, liability attaches "even if the driver embarks on an undertaking of his or her own while using the carrier-lessee's I.C.C. authority."  *Id.*  According to the court, this holding "removes factual confusion attendant to determining which party is responsible for damages, thus relieving the innocent victim from the sometimes interminable delays that accompany multiple-party litigation, by focusing liability as it does, and forcing the trucking companies to allocate the various indemnification agreements among themselves.  Once liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnification from other potentially responsible parties, not the innocent victim."  *Id.* at 266, 569 N.E.2d at 1053.

Initially, we note that, although *Wyckoff* emphasizes the benefit to the public from the scheme for determining liability espoused therein, *Wyckoff* is clearly also meant to settle issues of liability as to the carrier-lessee, the lessor, and their respective insurers. See *Ohio Cas. Ins. Co. v. United S. Assur. Co.* (1993), 85 Ohio App.3d 529, 533, 620 N.E.2d 163, 165–166.

■ Therefore, in the case at bar, the central issues in dispute relate to whether, at the time of the accident, Brogan's truck was displaying Tri–State's I.C.C. placards, and whether the lease between Brogan and Tri–State was in effect at the time of the accident. If the lease was in effect and Brogan was displaying Tri–State's placards, Brogan was a statutory employee of Tri–State, which, through its insurer St. Paul, was required to provide coverage for injuries sustained by Rowand and Hughes in the accident.

Although the parties agree that Brogan's truck displayed Tri–State's I.C.C. numbers at the time of the accident, Tri–State asserts that, pursuant to the lease agreement, Brogan should have removed the placard for the return trip since, at the time of the accident, Brogan was not engaged in providing transportation services for Tri–State. On the other hand, Brogan claims the decals in question are not removable and that Tri–State never told him to remove or cover them for the return trip.

■ *Wyckoff* does not articulate any exception to its absolute pronouncement that the display of I.C.C. numbers, where a lease is in effect, is dispositive of the question of liability of a carrier-lessee for its lessor's conduct, nor will we create an exception herein. Instead, *Wyckoff* suggests that the more crucial issue is not whether the lessor should have removed the I.C.C. placard, but whether, at the time the cause of action arose, a lease was in effect and the lessor was a statutory employee.

In the case at bar, St. Paul and Tri–State maintain that the lease was not in effect because, at the time of the accident, Brogan was not engaged in providing transportation services for Tri–State, and that Brogan was not only making a return trip with an empty truck but, also, Brogan was free at that time to contract with another company to provide transportation services as Tri–State had agreed to permit him to do when he was not needed by Tri–State.

These assertions do not automatically lead to a conclusion that, at the time of the accident, the lease was not in effect. The lease provides, in pertinent part:

"10. LIABILITY INSURANCE

"A. Carrier acknowledges and agrees it will provide property damage, public liability, and cargo insurance to the extent required by law or by lawful regulations with respect to the motor vehicle equipment of Contractor set forth at

Exhibit A, <u>BUT ONLY WHILE SUCH EQUIPMENT IS ENGAGED IN PROVIDING TRANSPORTATION SERVICES TO CARRIER UNDER THIS AGREEMENT.</u>

" * * *

"E.   The parties agree that the motor vehicle equipment referred to at Exhibit A is 'engaged in providing transportation services to Carrier', only upon completion of loading, and thereafter proceeding under ACTUAL LOAD, i.e. carrying cargo.

" * * *

"23.   <u>ACCEPTANCE, CANCELLATION AND NON-ASSIGNABILITY</u>

"A.   The parties acknowledge and agree:

"1.   This Agreement will not be effective until accepted in writing, by an authorized agent of Carrier, and shall continue in full force and effect until canceled in conformity with the provisions hereof.

"2.   This Agreement may be terminated at any time, for any reason, by either party hereto."

Thus, under the terms of the lease, the lease was in effect until canceled or terminated, and Tri-State was obligated to provide insurance coverage while Brogan was under actual load.   While the terms of the agreement purported to deny Tri-State's liability where Brogan was not carrying cargo for Tri-State, the agreement was nevertheless still in effect, since there was no evidence that either party had canceled or terminated the lease once Brogan delivered his load.   In addition, although the lease specifically permitted either Tri-State or Brogan to terminate the lease at any time, for any reason, there was no evidence that simply making a return trip without being under actual load resulted in termination of the lease agreement.

Although the lease agreement attempted to exclude coverage to Brogan while he was making a return trip without carrying a load, *Wyckoff* renders ineffective this apparent attempt by Tri-State to contractually circumscribe its liability, since the only issue was whether the lease agreement was in effect and the I.C.C. numbers were being displayed.   In *Ohio Cas.*, the Second District Court of Appeals addressed a similar assertion that a carrier-lessee was liable only while its lessor was under actual load.   Although the court cited with favor the case of *St. Paul Fire & Marine Ins. Co. v. Frankart* (1977), 69 Ill.2d 209, 13 Ill.Dec. 31, 370 N.E.2d 1058, which had determined that such return trips are part and parcel of providing transportation services for a carrier-lessee, *Ohio Cas.* concluded that *Wyckoff* requires a showing only that, at the time of the accident, the I.C.C. placard was being displayed.

*Ohio Cas.* never addressed the issue of whether the lease was in effect at the time of the accident, instead focusing solely upon the fact that the I.C.C. placard was being displayed. Nevertheless, we find support in *Frankart* and in *Am. Transit Lines v. Smith* (C.A.6, 1957), 246 F.2d 86, 90–91 (carrier-lessee cannot delegate responsibility for return trip, since carrier-lessee has put the entire trip in motion), for the concept that Brogan was providing transportation services for Tri–State during the return trip and that, under this reasoning and under *Wyckoff*, Tri–State could not effectively contract out of its responsibility for Brogan's return trip.

Therefore, applying both *Wyckoff* and *Ohio Cas.*, we conclude that, at the time of Brogan's collision with Rowand and Hughes, Brogan was a statutory employee of Tri–State because: (1) his truck displayed a placard containing Tri–State's I.C.C. numbers; and (2) the lease between Brogan and Tri–State was in effect.

With these considerations in mind, we now turn to the assignments of error raised by the various parties.

St. Paul's first assignment of error and Tri–State's first assignment of error both address the issue of whether Brogan was Tri–State's employee at the time of the accident, in particular whether the lease agreement between Brogan and Tri–State was in effect. A related issue is articulated in Tri–State's fourth assignment of error, which charges that the court erred in concluding that Brogan did not breach his lease agreement with Tri–State.

Based upon *Wyckoff*, St. Paul's and Tri–State's first assignments of error are not well taken, since the lease agreement was in effect at the time of the accident. Tri–State's fourth assignment of error, alleging that Brogan breached the lease by displaying the placard when he was not providing transportation services as defined by the lease, is not well taken because the issue of whether Brogan engaged in improper or illegal conduct in failing to remove the placard is not pertinent to a determination of liability under *Wyckoff*. Tri–State may take other legal action against Brogan for displaying Tri–State's I.C.C. numbers if such was improper and in breach of the agreement between Brogan and Tri–State; however, a determination of improper conduct by Brogan does not change *Wyckoff's* underlying rationale that accident victims have a right to rely upon an I.C.C. placard's representation of liability on the part of the carrier-lessee. Moreover, the trial court correctly found that, being engaged in a return trip, Brogan was engaged in the business of Tri–State, since Tri–State had set the trip in motion, and so the display of the I.C.C. placard at the time of the accident was arguably proper.

Therefore, St. Paul's first assignment of error, and Tri–State's first and fourth assignments of error are overruled.

■ St. Paul's second assignment of error and Tri–State's second assignment of error assert that the trial court erred in determining St. Paul was the primary insurer under these facts. St. Paul's and Tri–State's third assignments of error and the first assignment of error of Brogan all assert that the trial court erred in finding that Canal was not required to provide coverage or defend Brogan.

For the reasons stated above, these assignments of error are not well taken. The trial court did not err in determining that St. Paul had the primary duty to provide coverage for the accident, nor in determining that Canal was not required to provide coverage or defend Brogan. St. Paul's and Tri–State's second and third assignments of error, and Brogan's first assignment of error are overruled.

■ St. Paul's fourth assignment of error, Tri–State's fifth assignment of error, and Brogan's third assignment of error all claim that the trial court erred in determining that Brogan is liable to indemnify Tri–State for amounts in excess of Tri–State's policy limits with St. Paul.

St. Paul asserts that the trial court's only possible source for its finding of an agreement by Brogan to indemnify Tri–State was in the lease agreement, which did not define Brogan's duty to indemnify as being only for amounts in excess of the policy limits of Tri–State's policy with St. Paul. Tri–State reiterates this argument but adds that, under the agreement, Brogan's duty to indemnify Tri–State commenced from the moment of the accident, and that Brogan agreed to defend Tri–State in the action by Rowand and Hughes.[1] Finally, Brogan asserts that the issue of indemnification would have been subject to a jury trial and, since Brogan dismissed all claims for which he would have been entitled to a jury, the issue was not before the court and was improperly considered.

In determining this question, the trial court's decision stated as follows:

"In its cross-claim, Tri–State sought a declaration that Brogan is obligated to indemnify St. Paul for any monies paid due to the accident. The Ohio Supreme Court has stated that '[i]ndemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement.' *Travelers Indemnity Co. v. Trowbridge* (1975), 41 Ohio St.2d 11 [70 O.O.2d 6, 321 N.E.2d 787], at paragraph two of the syllabus. As there is no evidence that Tri–State has yet been compelled to pay anything, Brogan is not in brech [*sic*] of the lease agreement for failing to indemnify Tri–State.

---

1. Interestingly, Tri–State and St. Paul argue both that the lease agreement was not in effect and that the agreement requires Brogan to provide indemnification. The two arguments would appear mutually exclusive.

"However, Brogan did agree to indemnify Tri–State for all damages to person or property in excess of the policy limit caused by the acts of Brogan. Therefore, should Tri–State be compelled to pay any monies in excess of the policy limit to Rowand or Hughes as a result of the accident which occasioned this action, Brogan will be obligated to indemnify Tri–State for those losses."

Under *Wyckoff*, the trial court was permitted not only to determine liability for the accident but also to determine which insurance company was responsible for coverage. *Ohio Cas.*, 85 Ohio App.3d at 533, 620 N.E.2d at 165–166. Nevertheless, the trial court was not permitted to read additional terms into the lease agreement. As the trial court indicated, a right to indemnification must arise out of contract, and we find nothing in the lease agreement, either express or implied, which would require Brogan to indemnify Tri–State for damages in excess of Tri–State's policy limit with St. Paul. Instead, the agreement states:

"9. CARRIER'S RIGHT TO INDEMNIFICATION

"Contractor acknowledges and agrees:

"A. To indemnify and save harmless Carrier from any/all claims, suits, losses, fines or other expenses arising out of, based upon, or incurred in any manner or fashion because of injury to any person(s), or damage to property sustained or which may be alleged to have been sustained, by reason of any negligence or alleged negligence, on the part of Contractor, its agents, servants and/or employees. No provision of this paragraph shall be construed in any way to limit the liability of Carrier to the public in connection with the use of the motor vehicle equipment set forth at Exhibit A, under this Agreement.

"IMPORTANT!

"CONTRACTOR HEREBY ACKNOWLEDGES AND AGREES THAT IT HAS ACCEPTED FULL AND TOTAL RESPONSIBILITY/LIABILITY FOR ANY/ALL INJURY/DAMAGE TO THE PERSON AND/OR PROPERTY OF ANY/ALL THIRD PARTIES WHILE ENGAGED IN PROVIDING TRANSPORTATION SERVICES UNDER THIS AGREEMENT."

This provision indicates that Brogan must indemnify Tri–State for his own negligence while he was providing transportation services under the agreement, but says nothing about Brogan's duty to indemnify Tri–State for damages in excess of any policy limit. Whether or not Tri–State may later seek indemnification from Brogan for damages arising out of his negligence does not change *Wyckoff's* conclusion that the carrier-lessee is liable "as a matter of law for accidents that occur while a lease is still in effect and its I.C.C. placards are displayed on the vehicle." *Wyckoff*, 58 Ohio St.3d at 265, 569 N.E.2d at 1053.

The trial court erred in interpreting the lease agreement in this manner; moreover, the issue of whether Tri–State is entitled to indemnification from

Brogan for damages which have not yet been determined or paid is premature and is more appropriately addressed in connection with the personal injury action by Rowand and Hughes, rather than in this declaratory judgment action which seeks to settle only the question of liability.

Therefore, we sustain St. Paul's fourth assignment of error, Tri–State's fifth assignment of error, and Brogan's third assignment of error.

■ Brogan's second assignment of error argues that the trial court erred in resolving Brogan's bad faith claim against St. Paul when that claim was subject to a right to jury trial, and the trial court, through an agreed journal entry, had previously dismissed that claim without prejudice.

The agreed journal entry states, in part:

"IT IS THEREFORE ORDERED by agreement of counsel that the following issues and any subissues thereto shall be decided by the court:

" * * *

"3. Any other issues proposed by the parties in their briefs which are appropriate for decision by the court pursuant to Title [sic] 2711, Rev.Code, and for which there is no right to a trial by jury.

" * * *

"IT IS FURTHER ORDERED that all claims cognizable at law for damages or indemnity for which the parties are entitled to trial by jury are hereby dismissed without prejudice to future action."

■ Although there is no specific mention of Brogan's bad faith claim in this journal entry, Brogan's assertion that such a claim was subject to a right to jury trial is meritorious. Despite arising out of a contractual relationship, a claim of bad faith against an insurer is a tort action which may be maintained separately from any underlying breach of contract action. *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228; *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315. It is axiomatic that such a claim raises issues of fact which are subject to a right of jury trial. Thus, the trial court should not have decided this issue, since the journal entry caused it to have been dismissed without prejudice. We therefore sustain Brogan's second assignment of error.

St. Paul's first, second and third assignments of error are overruled, Tri–State's first, second, third and fourth assignments of error are overruled, and Brogan's first assignment of error is overruled. St. Paul's fourth, Tri–State's fifth, and Brogan's second and third assignments of error are sustained. The judgment of the trial court is affirmed in part and reversed in part, and this

matter is remanded with instructions to the trial court to enter judgment consistent with the opinion rendered herein.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded with instructions.*

PETREE and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.