[Cite as *Alexander v. Davis*, 2022-Ohio-2345.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TERESA ALEXANDER & DANIEL DETERS, Coadministrators of the Estate of Jordan Alexander, | : | APPEAL NO. C-210461 TRIAL NO. A-1904890 |
| Plaintiffs-Appellants, | : | |
| vs. | : | *O P I N I O N.* |
| TIFFANY DAVIS, | : | |
| and | : | |
| DAYTON CORRUGATED PACKAGING CORP., | : | |
| Defendants, | : | |
| and | : | |
| Q5 TALENT, L.L.C., | : | |
| and | : | |
| HIRE SOLUTION, L.L.C., | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  July 6, 2022

*Mezibov Butler, Susan J. Butler* and *Brian J. Butler,* for Plaintiffs-Appellants,

*Reminger Co., L.P.A., Timothy B. Spille, Brian D. Sullivan* and *Brianna Marie Prislipsky,* for Defendants-Appellees.

**CROUSE, Judge.**

{¶1} In October 2017, defendants-appellees Q5 Talent, L.L.C., and Hire Solution, L.L.C., (collectively "Q5") entered into an agreement with defendant Dayton Corrugated Packaging Corporation ("DCPC") to provide temporary workers to DCPC. Per the agreement, Q5 would pay the worker and invoice DCPC for the cost. The worker was to be considered an "independent contractor" to DCPC. Tiffany Davis was hired by Q5 and placed in a pool of applicants for open commercial trucking positions with DCPC. DCPC selected Davis for a position.

{¶2} On August 14, 2018, Davis was assigned by DCPC to drive a route in Cincinnati, Ohio. She was driving a tractor trailer leased by DCPC that displayed DCPC's Public Utilities Commission of Ohio ("P.U.C.O.") number and DCPC's United States Department of Transportation ("D.O.T.") number. Davis illegally drove the tractor trailer eastbound on Columbia Parkway[1] and allegedly attempted an illegal left turn or U-turn. As Davis was making the turn, Jordan Alexander drove her motorcycle over the crest of a hill eastbound on Columbia Parkway and collided with the tractor trailer. Alexander died of her injuries at the scene.

{¶3} Plaintiffs-appellants Teresa Alexander and Daniel Deters, co-administrators of Alexander's estate, brought claims for wrongful death and survivorship against Davis, DCPC, and Q5, negligent hiring and retention against DCPC and Q5, and negligent supervision against DCPC.

---

[1] Cincinnati Municipal Code 506-66 prohibits any vehicle containing more than two axles and four wheels from driving on Columbia Parkway from Fifth and Pike Streets to Delta Avenue.

{¶4} Q5 moved for summary judgment on all claims against it on the basis that Davis was a statutory employee of DCPC at the time of the crash, and therefore, Q5 could not be held liable pursuant to the Ohio Supreme Court's decision in *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv., Inc.*, 58 Ohio St.3d 261, 569 N.E.2d 1049 (1991). The trial court granted Q5's motion for summary judgment. Plaintiffs filed a motion for reconsideration regarding their claim for negligent hiring and retention. The court denied the motion and amended its judgment entry to certify that there was no just reason to delay an appeal.

{¶5} Plaintiffs have appealed. In their sole assignment of error, they argue that the trial court erred in ruling that Q5 was immune from liability for plaintiffs' claims for wrongful death, survivorship, and negligent hiring and retention. For the reasons discussed below, the sole assignment of error is sustained. The trial court's judgment is reversed and the cause is remanded for further proceedings.

### Sole Assignment of Error

{¶6} Summary judgment is appropriate when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party. *Hefler v. Remke Mkts., Inc.*, 1st Dist. Hamilton No. C-200364, 2021-Ohio-2694, ¶ 7. We review a grant of summary judgment de novo. *Id.*

{¶7} Central to the trial court's holding and this appeal is the Ohio Supreme Court's decision in *Wyckoff*, 58 Ohio St.3d 261, 569 N.E.2d 1049. In *Wyckoff,* the driver of the tractor trailer rig, Clinton Bell, worked for Wyckoff Trucking, Inc., ("Wyckoff"), which owned the rig. *Id.* at syllabus. Wyckoff leased the rig and Bell's services to C.J. Rogers Trucking Co. ("Rogers"). Per the lease, Rogers had exclusive

4

possession, control, and responsibility of the rig. *Id.* However, Wyckoff and Rogers had a verbal agreement that the rig could be "trip-leased" to other companies when it was not being utilized by Rogers. *Id.*

{¶8} On the day of the accident, Bell completed delivery of a shipment for a company not involved in the suit. *Id.* Bell then telephoned Marsh Brothers Trucking Service, Inc., ("Marsh") to inquire about trip-leasing the rig to pick up a shipment for Marsh. Marsh directed Bell to pick up a shipment from Armco Steel and then come to Marsh's office in Dayton in order to complete the paperwork for the trip-lease. *Id.* On his way to Armco Steel, Bell's rig collided with a vehicle driven by the plaintiff, Thomas Howard. *Id.* Rogers's Interstate Commerce Commission ("I.C.C.")[2] and P.U.C.O. placards were displayed on the side of the rig. *Id.*

{¶9} Howard sued Bell, Rogers, Wyckoff and other parties. Bell and Wyckoff requested a declaratory judgment to determine whether Rogers and Marsh, along with their insurance companies, were required to defend and indemnify them. *Id.* The court of appeals, citing respondeat superior principles and the Ohio Supreme Court's decision in *Thornberry v. Oyler Bros., Inc.,* 164 Ohio St. 395, 131 N.E. 2d 383 (1955), held that Marsh was jointly and severally liable with Wyckoff for the injuries and Rogers was not liable because Bell was not acting in the business of Rogers at the time of the crash. *Wyckoff* at syllabus.

---

[2] The I.C.C. was dissolved in 1996, but its regulations continue to exist under the purview of the D.O.T.

{¶10} The Ohio Supreme Court reversed. *Wyckoff,* 58 Ohio St.3d at 264, 569 N.E.2d 1049. It noted that the I.C.C. rule that formed the basis of its decision in *Thornberry* had been amended, putting *Thornberry's* viability in doubt. *Id.* The amended rule, codified at 49 C.F.R. 1057.12(c)(1) (the "control regulation"), provided that the carrier-lessee "shall have exclusive possession and control of the vehicle and shall assume complete responsibility for the operation of the vehicle" and shall display its I.C.C. placards on the vehicle. *Id.* at 264-265. This rule was enacted in response to perceived "abuses" by carriers that "threatened the public interest and the economic stability of the trucking industry," such as the use of leased vehicles to avoid safety regulations. *Id.* at 264. The use of leased vehicles had also led to "public confusion as to who was financially responsible for accidents caused by those vehicles." *Id.*

{¶11} The court stated, "The determinative issue in this appeal is whether a carrier-lessee of a motor vehicle engaged in interstate commerce is liable under [I.C.C.] regulations for any accidents caused by the negligence of the driver while the lease is in effect and while the motor vehicle displays the carrier-lessee's I.C.C. placards or identification numbers, even though the driver is not the lessee's employee." *Id.* at 264.

{¶12} The court considered two options. Under the minority approach, where a lease was in effect at the time of the accident and the lessee's I.C.C. placards were displayed on the vehicle, a rebuttable presumption of an employment relationship between the driver and the carrier-lessee existed. *Id.* at 265. This meant that the lessee's liability was ultimately determined using common-law doctrines, such as respondeat superior. *Id.* The majority approach provided that 49 C.F.R. 1057.12(c)(1) created an irrebuttable presumption ("statutory employment") of an employment relationship between the driver and carrier-lessee displaying its I.C.C. placards. *Id.*

The majority view "essentially states that if the driver is negligent, the carrier-lessee is liable as a matter of law for accidents that occur while a lease is still in effect and its I.C.C. placards are displayed on the vehicle." *Id.*

**{¶13}** The court adopted the majority approach. "[A] strict construction of the I.C.C. regulations is more straightforward than the minority view and does a better job of advancing the interests of the public at large" by compelling lessees to enforce safety standards and removing factual confusion about which party is responsible for damages. *Wyckoff,* 58 Ohio St.3d at 266, 569 N.E.2d 1049. This relieves the burden on innocent victims and forces the trucking companies to allocate indemnification agreements among themselves. *Id.* "Once liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnification from other potentially responsible parties, not the innocent victim." *Id.* Furthermore, the majority approach clears up confusion in situations such as the one present in *Wyckoff,* where Bell was on his way to pick up a trip-lease load for Marsh, but at any time prior to the actual pick-up of Marsh's goods on a trip-lease, Rogers could have demanded use of Bell's rig under the terms of the lease. *Id.* The "bright-line" guidelines of the majority viewpoint "unmistakably fix liability for the accident instead of essentially forcing the innocent victim to sue everyone in order to redress his injuries and damages." *Id.*

**{¶14}** The court held, "[I]n tort causes of action involving leased vehicles of interstate motor carriers, primary liability shall be determined with regard to Interstate Commerce Commission regulations rather than the common-law doctrines of respondeat superior, master-servant, independent contractor and the like." *Id.* Under the I.C.C. regulations, liability attaches to a lessee where it is established that at the time of the accident a lease of the vehicle was in effect and the vehicle displayed the lessee's I.C.C. placards. *Id.* Finally, the court held that 49 C.F.R. 1057.12(c)(1)

creates an "irrebuttable presumption of an employment relationship" between the lessee and the driver of a vehicle that displays the lessee's I.C.C. placards. *Id.* at 266-267.

{¶15} Justice Brown concurred in the judgment, but wrote separately to "emphasize that there is nothing in our opinion which precludes an injured plaintiff from directly suing parties other than the statutory employer, under common-law principles, if the plaintiff so desires. As other courts have recognized, Section 1057.12, Title 49, C.F.R. does not eliminate the common-law liability of parties other than the statutory employer." *Id.* at 267 (Brown, J., concurring).

{¶16} Plaintiffs challenge the trial court's judgment on three grounds. They argue that (1) *Wyckoff* does not apply to protect Q5 in the present case, (2) *Wyckoff* is no longer good law, and (3) *Wyckoff* does not apply to the claim for negligent hiring and retention filed against Q5.

## I. The Scope of *Wyckoff*

{¶17} Plaintiffs acknowledge that DCPC has primary liability pursuant to *Wyckoff* because the truck bore DCPC's P.U.C.O. and D.O.T. placards. But, they argue, the trial court improperly extended *Wyckoff* when it held that Q5 cannot be liable because DCPC is primarily liable. Plaintiffs argue that the purpose of *Wyckoff* was to benefit the victim and the public at large and that the holding in *Wyckoff* should not be extended to allow defendants such as Q5 to avoid liability.

{¶18} Q5 argues that *Wyckoff* established an irrebuttable presumption of employment for a carrier-lessee that supersedes all common-law doctrines of employment and liability. As a result, Q5 contends that it is not Davis's employer, and therefore, there is no relationship between Davis and Q5 through which liability might flow.

8

{¶19} We hold that while *Wyckoff* establishes that DCPC is primarily liable, it does not establish that DCPC is exclusively liable or that Q5 is not liable.

{¶20} The *Wyckoff* court held, "[I]n tort causes of action involving leased vehicles of interstate motor carriers, *primary* liability shall be determined with regard to Interstate Commerce Commission regulations rather than the common-law doctrines of *respondeat superior*, master-servant, independent contractor and the like." (Emphasis added.) *Wyckoff,* 58 Ohio St.3d at syllabus, 569 N.E.2d 1049. Significantly, Justice Brown stated in his concurrence that the *Wyckoff* holding should not be interpreted as eliminating the common-law liability of parties other than the statutory employer. *Id.* at 267 (Brown, J. concurring).

{¶21} Furthermore, this court narrowly interpreted *Wyckoff's* holding in *Tolliver v. Braden*, 112 Ohio App.3d 86, 677 N.E.2d 1249 (1st Dist.1996). In *Tolliver,* Donald Brady was driving a tractor trailer rig home from a social visit with the rig's owner, Robert Braden, when he hit and killed another motorist. *Id.* at 87. Brady was not hauling any freight or pulling a trailer at the time. Prior to the accident, Braden had leased the truck to J&W Express and the truck bore J&W's I.C.C. placards at the time of the accident. *Id.*

{¶22} Brady argued that, pursuant to *Wyckoff*, he was the statutory employee of J&W at the time of the accident, and therefore, J&W's insurance provider was required to defend him against the suit brought by the decedent's estate. *Id.* at 87-88. This court rejected Brady's argument. The court stated:

> [T]he intent of the court's holding in *Wyckoff* is to protect the public at large; it only applies between the 'innocent victim' and the interstate carrier whose placard appears on the vehicle. *Wyckoff* does not prevent the carrier deemed to be the statutory employer from seeking indemnification

or contribution, nor does it nullify contracts between parties who are not members of the protected class and who are in a position to determine the relationships among the parties.

*Id.* at 88. Brady was not operating the truck with J&W's permission or furthering its business at the time of the accident. *Id.* at 89. Therefore, pursuant to the terms of the insurance policy, Brady was not covered by the policy. *Id.*

{¶23} The *Tolliver* court held that *Wyckoff* only applies between an innocent victim and the carrier-lessee whose placards are on the side of the rig, and the intent of *Wyckoff* is to protect the public at large. *Id.* at 88. Therefore, *Wyckoff* does not apply where it is the truck driver who seeks to invoke the statutory-employment doctrine in order to obtain insurance coverage. *See id.* at 88-89.

{¶24} This interpretation of *Wyckoff* and *Tolliver* is supported by other cases. *See Republic W. Ins. Co. v. Williams*, D.S.C. No. 9:04-0449-23, 2005 U.S. Dist. LEXIS 55472, *15 (Aug. 15, 2005), citing *Tolliver* at 88 ("a number of Ohio courts have limited *Wyckoff*'s application and have found that its 'irrebuttable presumption' rule was intended to protect injured third-party victims in their suits against motor-carriers, not the driver of the leased vehicle or a sophisticated entity like his insurer."); *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F.Supp.2d 579, 588-589 (E.D.Pa.1999), citing *Gilstorff v. Top Line Express, Inc.,* 6th Cir. No. 96-3081, 1997 U.S. App. LEXIS 780, *10 (Jan. 14, 1997), citing *Tolliver*, 112 Ohio App.3d at 86, 677 N.E.2d 1249 ("[Some] Ohio appellate courts, and an unpublished Sixth Circuit decision, have 'limited *Wyckoff* to its literal application as between the innocent victim and an interstate carrier-lessee whose I.C.C. number appears on the vehicle, because *Wyckoff* itself indicates that the statutory employer may seek contribution and/or indemnification from other potentially responsible parties.' "); *Carolina Cas. Ins. Co.*

*v. Panther II Transp., Inc.,* 402 Fed.Appx. 62, 66 (6th Cir.2010) ("*Wyckoff's* language also strongly suggests that the Ohio Supreme Court never intended to extend the irrebuttable presumption to anyone other than the victims of truck accidents."); *Harco Natl. Ins. Co. v. Am. Inter-Fidelity*, 6th Dist. Lucas No. L-93-313, 1994 Ohio App. LEXIS 4461, *6 (Sep. 30, 1994) (*Wyckoff* only applies between carrier-lessee and innocent victim); *Balez-Pierce v. Price & Boyce, Inc.*, 86 Ohio App.3d 119, 122, 619 N.E.2d 1194 (5th Dist.1993) ("*Wyckoff* allocates responsibility as it applies to the public. It does not affect the interpretation of any contracts among the various parties-defendant."); *Roseberry v. Balboa Ins. Co.*, 90 Ohio App.3d 33, 36, 627 N.E.2d 1062 (12th Dist.1993) ("The irrebuttable presumption set forth in *Wyckoff* was intended for the benefit of the public at large, not for the driver of the leased vehicle.").

{¶25} *But see Gulick v. Costain Coal, Inc.*, 5th Dist. Coshocton No. 95-24, 1996 Ohio App. LEXIS 4739, *3 (Oct. 9, 1996); *Canal Ins. Co. v. Brogan*, 93 Ohio App.3d 765, 771, 639 N.E.2d 1219 (10th Dist.1994) ("Although *Wyckoff* emphasizes the benefit to the public from the scheme for determining liability espoused therein, *Wyckoff* is clearly also meant to settle issues of liability as to the carrier-lessee, the lessor, and their respective insurers."); *Ohio Cas. Ins. Co. v. United S. Assur. Co.*, 85 Ohio App.3d 529, 620 N.E.2d 163 (2d Dist.1993) (same).

{¶26} We hold that *Wyckoff* does not foreclose plaintiffs from pursuing claims against Q5 based on the common-law principle of respondeat superior. By establishing primary liability for one defendant through the statutory-employment doctrine, *Wyckoff* did not foreclose the possibility of liability for other defendants through common-law principles. *See Zamalloa v. Hart*, 31 F.3d 911, 916 (9th Cir.1994) (holding that the *Wyckoff* court had not addressed the issue of whether multiple carrier-lessees could be liable at the same time). Furthermore, it is questionable

whether *Wyckoff* is still good law after the 1992 amendment to the regulation upon which its holding was based, 49 C.F.R. 1057.12(c).

## II.    Is *Wyckoff Still Good Law?*

{¶27}  In 1992, the I.C.C. renumbered and amended 49 C.F.R. 1057.12(c). It added subsection (4), which provides:

Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements.

49 C.F.R. 376.12(c)(4) (originally codified at 49 C.F.R. 1057.12(c)(4)).

{¶28}  The I.C.C. explained the purpose of the amendment in its proposal to amend the regulation:

The purpose of the amendment is to give notice to the courts and workers' compensation or other administrative tribunals who have ruled otherwise that, in requiring that a lease provide for the lessee's "exclusive possession, control, and use" of the equipment provided by the lessor, it is not the intention of the Commission's regulations to define or affect the relationship between a motor carrier lessee and an independent owner-operator lessor. * * * [T]he type of control required by the regulation does not affect "employment" status and * * * it is not the intention of the regulations to affect the relationship between a motor carrier lessee and the independent owner-operator lessor.

*Petition to Amend Lease and Interchange of Vehicle Regulations*, 57 Fed.Reg. 32905 (July 24, 1992); *accord Petition to Amend Lease & Interchange of Vehicle Regulations*, 8 I.C.C.2d 669, 671 (1992).

**{¶29}** Multiple federal courts have interpreted the amendment as removing the control regulation from the employment-status analysis altogether, nullifying the interpretation relied upon by the court in *Wyckoff. See, e.g., UPS Ground Freight, Inc. v. Farran*, 990 F.Supp.2d 848, 860 (S.D.Ohio 2014) (holding that the *Wyckoff* court misinterpreted the I.C.C. regulations and that the amendment abrogated the doctrine of statutory employment); *Edwards v. Cardinal Transport, Inc.*, 821 Fed.Appx. 167, 173 (4th Cir.2020) (discussing how federal courts have interpreted 49 C.F.R. 376.12(c)(4) since the 1992 amendment).

**{¶30}** For the most part, Ohio courts have followed *Wyckoff's* holding, even after the 1992 amendment. In *Cincinnati Ins. Co. v. Stacey*, 12th Dist. Clinton No. CA2008-06-019, 2008-Ohio-6761, ¶ 23, the Twelfth District held that the 1992 amendment did not abrogate *Wyckoff*. The opinion relied on other courts that have continued to follow *Wyckoff* after the amendment, although none of the cases cited discuss the 1992 amendment. *See id.* at ¶ 24.

**{¶31}** In *Bookwalter v. Prescott*, 168 Ohio App.3d 262, 2006-Ohio-585, 859 N.E.2d 978, ¶ 16 (6th Dist.), the Sixth District recognized that "there may be a question regarding the status of *Wyckoff's* irrebuttable presumption" following the 1992 amendment. But it distinguished *Wyckoff* factually, and therefore, chose not to resolve the issue. *Id.*

**{¶32}** There is a question as to *Wyckoff's* viability following the 1992 amendment to 49 C.F.R. 376.12(c).  However, we do not reach that issue definitively

because we hold that *Wyckoff* does not insulate Q5 from potential liability for the derivative wrongful-death and survivorship claims.

### III. Does *Wyckoff* apply to plaintiffs' claim for negligent hiring and retention against Q5?

**{¶33}** Plaintiffs argue that *Wyckoff* does not bar their claim for negligent hiring and retention against Q5 because that claim is a direct claim based on Q5's negligent acts/omissions. Specifically, plaintiffs allege that Q5 knew or should have known that Davis was incompetent to drive a tractor trailer and that Q5's negligence in hiring and retaining Davis was the proximate cause of Alexander's death.

**{¶34}** Q5 does not dispute that a claim for negligent hiring and retention is a direct claim or that *Wyckoff* does not control direct claims. Rather, Q5 contends that under the doctrine of statutory employment, DCPC is Davis's sole employer as a matter of law. Therefore, it argues that plaintiffs cannot satisfy the first element of a claim for negligent hiring and retention—the existence of an employment relationship between Q5 and Davis. *See Linder v. Am. Natl. Ins. Co.*, 155 Ohio App.3d 30, 2003-Ohio-5394, 798 N.E.2d 1190, ¶ 31 (1st Dist.) (discussing the elements of an action for negligent hiring and retention).

**{¶35}** As discussed above, *Wyckoff* definitively establishes an employment relationship between DCPC and Davis, but not to the exclusion of an employment relationship between Davis and Q5.

**{¶36}** Q5 also contends that it surrendered any control over Davis when it entered into a contract to provide Davis's services to DCPC. This argument misses the point of plaintiffs' claim for negligent hiring and retention against Q5. Q5's alleged negligence occurred prior to Davis's alleged actions in causing the accident. Plaintiffs

claim that Q5 was negligent in hiring Davis and placing her in the pool of drivers from which she was chosen by DCPC.

**{¶37}** Therefore, *Wyckoff* does not bar plaintiffs' claim for negligent hiring and retention against Q5.

### *Conclusion*

**{¶38}** The holding in *Wyckoff* does not shield Q5 from liability for any of the claims in this case. Furthermore, the viability of the *Wyckoff* decision is questionable based on the 1992 amendment to 49 C.F.R. 376.12(c). The sole assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**MYERS, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.