WYCKOFF TRUCKING, INC. ET AL., APPELLANTS, *v.*
MARSH BROTHERS TRUCKING SERVICE, INC. ET AL., APPELLANTS;
C.J. ROGERS TRUCKING COMPANY ET AL., APPELLEES.

[Cite as Wyckoff Trucking, Inc. *v.* Marsh Bros. Trucking Service, Inc. (1991), 58 Ohio St. 3d 261.]

262

(No. 89-1746—Submitted November 14, 1990—Decided April 10, 1991.)

*Bieser, Greer & Landis, Michael W. Krumholtz* and *Geoffrey P. Walker,* for appellants Wyckoff Trucking, Inc. and Clinton Bell.

*Young & Alexander Co., L.P.A., Mark R. Chilson* and *Barbara Lehmann,* for appellants Marsh Brothers Trucking Service, Inc. and Miller's National Ins. Co.

*Freund, Freeze & Arnold* and *Gordon D. Arnold,* for appellant United States Fidelity & Guaranty Co.

*Pickrel, Schaeffer & Ebeling, Andrew C. Storar, Lyons & Fries Co., L.P.A.,* and *William J. Mulvey,* for appellees C.J. Rogers Trucking Co. and Michigan Mutual Ins. Co.

SWEENEY, J. The determinative issue in this appeal is whether a carrier-lessee of a motor vehicle engaged in interstate commerce is liable under Interstate Commerce Commission ("I.C.C.") regulations for any accidents caused by the negligence of the driver while the lease is in effect and while the motor vehicle displays the carrier-lessee's I.C.C. placards or identification numbers, even though the driver is not the lessee's employee. For the reasons that follow, we answer such inquiry in the affirmative, and thereby reverse the judgment rendered by the court of appeals below.

The court of appeals below relied on this court's prior pronouncement in *Thornberry* v. *Oyler Bros., Inc.* (1955), 164 Ohio St. 395, 58 O.O. 189, 131 N.E. 2d 383, in finding, *inter alia*, that traditional common-law doctrines, such as *respondeat superior*, are to be used in determining liability in interstate carrier accident cases involving leased vehicles. However, *Thornberry* was decided prior to the amendments to the Interstate Commerce Act (former Section 304, Title 49, U.S. Code, Ch. 928, Pub. Law 957, 70 Stat. 983, 1 U.S. Code Cong. & Adm. News [1956] 1163), which, as amended, are now codified at Section 11107, Title 49, U.S. Code. At the time *Thornberry* was handed down, the I.C.C. rules provided that the carrier-lessee had merely the right to direct and control the operation of the leased motor vehicle. Former Administrative Rule No. 4,

quoted in *Behner* v. *Indus. Comm.* (1951), 154 Ohio St. 433, 438-439, 43 O.O. 360, 363, 96 N.E. 2d 403, 406. However, the new I.C.C. rule provides that the lessee *shall have exclusive possession and control of the vehicle and shall assume complete responsibility* for the operation of the vehicle. Section 1057.12(c)(1), Title 49, C.F.R.[1]

The policy rationale behind the change in I.C.C. regulations was succinctly explored by the federal court in *Empire Fire & Marine Ins. Co.* v. *Guaranty Natl. Ins. Co.* (C.A. 10, 1989), 868 F. 2d 357, 362:

"In the past, the use by truckers of leased or borrowed vehicles led to a number of abuses that threatened the public interest and the economic stability of the trucking industry. *See, e.g., American Trucking Ass'ns. v. United States,* 344 U.S. 298, 304-05, 73 S. Ct. 307, 311-12, 97 L.Ed. 337 (1953). In some cases, ICC-licensed carriers used leased or interchanged vehicles to avoid safety regulations governing equipment and drivers. *Id.* at 305, 73 S. Ct. at 312. In other cases, the use of non-owned vehicles led to public confusion as to who was financially responsible for accidents caused by those vehicles. *See, e.g., Mellon Nat'l. Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F. 2d 473, 477 (3d Cir. 1961).

"In order to address these abuses, Congress amended the Interstate Commerce Act to allow the ICC to prescribe regulations to insure that motor carriers would be fully responsi-

---

[1] Section 1057.12, Title 49, C.F.R. is as follows:

"Except as provided in the exemptions set forth in Subpart C of this part, the written lease required under § 1057.11(a) shall contain the following provisions. The required lease provisions shall be adhered to and performed by the authorized carrier.

"* * *

"(c) *Exclusive possession and responsibilities*—(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."

ble for the operation of vehicles certified to them. 49 U.S.C. § 304(e) (1956). This section was revised and reenacted in 1978. *See* 49 U.S.C. § 11107; *see also* 49 U.S.C. § 10927. In response to this mandate, the ICC promulgated regulations requiring that every lease entered into by an ICC-licensed carrier must contain a provision stating that the authorized carrier maintain 'exclusive possession, control, and use of the equipment for the duration of the lease,' and 'assume complete responsibility for the operation of the equipment for the duration of the lease.' 49 C.F.R. § 1057.12(c). Further, the ICC requires that all ICC-certified carriers maintain insurance or other form of surety 'conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles' under the carrier's permit. 49 C.F.R. § 1043.1(a).''

As mentioned before, leasing arrangements between interstate motor carriers are now governed by Section 11107, Title 49, U.S. Code, as well as the regulations promulgated thereunder, Part 1057, Title 49, C.F.R. Under these provisions, the lessee is required to display on the vehicle its I.C.C. identification number in order for the vehicle to lawfully carry freight in interstate commerce. Sections 1057.11(c)(1) and 1058.2, Title 49, C.F.R.

Nevertheless, the determination of tort liability arising out of accidents involving leased vehicles of interstate motor carriers under I.C.C. regulations has led to the emergence of two differing points of view. Under the minority view, a written lease in combination with the display of I.C.C. placards creates only a rebuttable presumption of an employment relationship between the driver of the vehicle and the carrier-lessee indicated on the placards. Thus, the carrier-lessee's liability is ultimately determined by resort to common-law doctrines such as *respondeat superior*. At least one federal court opined that our decision in *Thornberry, supra,* has placed Ohio law within this line of reasoning. See *Wilcox* v. *Transamerican Freight Lines, Inc.* (C.A.6, 1967), 371 F. 2d 403, certiorari denied (1967), 387 U.S. 931. See, also, *Pace* v. *Southern Express Co.* (C.A.7, 1969), 409 F. 2d 331.

On the other hand, the majority view holds that Section 1057.12(c)(1), Title 49, C.F.R. creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of the vehicle that displays the I.C.C. placards of the carrier-lessee. This irrebuttable presumption is also referred to as the doctrine of statutory employment. The majority viewpoint strictly construes the I.C.C. regulations and essentially states that if the driver is negligent, the carrier-lessee is liable as a matter of law for accidents that occur while a lease is still in effect and its I.C.C. placards are displayed on the vehicle. See, *e.g.,* *Rodriguez* v. *Ager* (C.A.10, 1983), 705 F. 2d 1229; *Wellman* v. *Liberty Mut. Ins. Co.* (C.A.8, 1974), 496 F. 2d 131; *Simmons* v. *King* (C.A.5, 1973), 478 F. 2d 857; *Proctor* v. *Colonial Refrigerated Transp., Inc.* (C.A.4, 1974), 494 F. 2d 89; *Mellon Natl. Bank & Trust Co.* v. *Sophie Lines, Inc.* (C.A.3, 1961), 289 F. 2d 473. Such liability attaches, under the majority interpretation, even if the driver embarks on an undertaking of his or her own while using the carrier-lessee's I.C.C. authority. See *Rodriguez, supra; Mellon, supra.* In fact, the Geauga County Court of Appeals adopted this precise position in *Jerina* v. *Schrock* (1987), 37 Ohio App. 3d 171, 525 N.E. 2d 524.

After careful consideration of the

competing points of view within this particular area of law, we believe it is time to abandon the law as articulated in *Thornberry, supra,* and *Wilcox, supra,* and join the mainstream approach, as articulated in *Jerina, supra,* in applying the doctrine of the lessee's liability to these cases. In our opinion, a strict construction of the I.C.C. regulations is more straightforward than the minority view and does a better job of advancing the interests of the public at large. Moreover, strict construction of the I.C.C. regulations will compel the carrier-lessee trucking company that displays its I.C.C. placards on the leased truck to scrupulously enforce safety standards on its leased vehicles, which are, by statutory definition, within its exclusive control, especially in light of the spectre of liability. Above all, the majority view removes factual confusion attendant to determining which party is responsible for damages, thus relieving the innocent victim from the sometimes interminable delays that accompany multiple-party litigation, by focusing liability as it does, and forcing the trucking companies to allocate the various indemnification agreements among themselves. Once liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnification from other potentially responsible parties, not the innocent victim.

In our view, the doctrine of statutory employment also serves a legitimate purpose in situations such as that presented herein, by clearly defining liability in cases arising in what can be categorized as the "gray area" of liability. For instance, at the time of the accident herein, Bell was en route to Armco Steel in order to pick up a load for Marsh; but at any time prior to the actual pick-up of Marsh's goods on a trip-lease, Rogers could have demanded use of Bell's rig under the terms of the master lease. Since the accident occurred prior to Bell's receiving the Marsh load, and since Bell could have changed his mind prior to picking up the Marsh load at Armco Steel, the "bright-line" guidelines set forth in the I.C.C. regulations under the majority viewpoint unmistakably fix liability for the accident instead of essentially forcing the innocent victim to sue everyone in order to redress his injuries and damages.

Under the majority view in the cause *sub judice,* Rogers is the party responsible for the injuries incurred by Howard. As found by the courts below, the master lease between Rogers and Wyckoff was in effect at the time of the accident, and the vehicle in issue was displaying the I.C.C. placards of Rogers.

Therefore, based on all the foregoing, we overrule *Thornberry, supra,* to the extent it is inconsistent with the pronouncements herein, and hold that in tort causes of action involving leased vehicles of interstate motor carriers, primary liability shall be determined with regard to Interstate Commerce Commission regulations rather than the common-law doctrines of *respondeat superior,* master-servant, independent contractor and the like.

We further apply Section 1057.12, Title 49, C.F.R. to the cause *sub judice,* and hold that in order for liability to attach on an interstate carrier-lessee under I.C.C. regulations, it must be established that at the time the cause of action arose, (1) a lease of the vehicle was in effect and (2) the vehicle displayed the carrier-lessee's placard listing its I.C.C. numbers.

Lastly, we hold that Section 1057.12(c)(1), Title 49, C.F.R. creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehi-

cle that displays the I.C.C. identification numbers of the carrier-lessee.

Accordingly, we reverse the judgment of the court of appeals below and remand the cause for further proceedings in accordance with this opinion.[2]

*Judgment reversed and cause remanded.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

H. BROWN, J., concurs separately.

MOYER, C.J., and WRIGHT, J., concurs in the syllabus and judgment.

HOLMES, J., dissents.

H. BROWN, J., concurring. I concur in the syllabus, judgment, and opinion of the majority. I write separately to emphasize that there is nothing in our opinion which precludes an injured plaintiff from directly suing parties other than the statutory employer, under common-law principles, if the plaintiff so desires. As other courts have recognized, Section 1057.12, Title 49, C.F.R. does not eliminate the common-law liability of parties other than the statutory employer. *Simmons* v. *King* (C.A.5, 1973), 478 F. 2d 857, 867 (liability of party other than statutory employer who has "practical control" over truck governed by state law); *Grinnell Mut. Reinsurance Co.* v. *Empire Fire & Marine Ins. Co.* (C.A.8, 1983), 722 F. 2d 1400, 1406 (lessor and lessee/statutory employer are joint tortfeasors); *Empire Fire & Marine Ins. Co.* v. *Truck Ins. Exchange* (Fla. App. 1985), 462 So. 2d 76, 80 (parties other than statutory employer are secondarily liable under state law); *Burton* v. *Diamond Sand & Stone Co.* (Fla. App. 1976), 327 So. 2d 95 (same).

HOLMES, J., dissenting. I respectfully dissent from the ill-conceived judgment reached by the majority which establishes that all carrier-lessees are liable as a matter of law for accidents that occur while their lease is in effect and I.C.C. placards are displayed on the subject vehicle, without regard to the appropriate status or action taken by the driver of the vehicle.

The seminal case on the issue of carrier-lessee responsibility is *Thornberry* v. *Oyler Bros., Inc.* (1955), 164 Ohio St. 395, 58 O.O. 189, 131 N.E. 2d 383, paragraphs one and three of the syllabus, which provide in pertinent part:

"Where a common carrier of freight by motor vehicle possesses Public Utilities Commission and Interstate Commerce Commission permits, leases in its operations, from an independent contractor, a vehicle, including the services of a driver, and such vehicle is operated under the carrier's permits, such driver is deemed to be under the direction and control of the carrier, and, under the doctrine of *respondeat superior*, the latter is fully responsible for the actions and conduct of the driver within the scope of the carrier's business."

"* * * [W]here the driver after unloading the freight takes the tractor-

---

[2] We find it necessary to remand this action to the trial court inasmuch as the court may wish to declare the various rights and responsibilities of the parties involved with respect to any claims of contribution or indemnification that Rogers may have, now that this court has declared Rogers to be the statutory employer of Bell with respect to the action brought by Howard.

268

trailer unit, represents it as his own and contracts with another party to haul freight for him to a point not covered by the permits, and where such action of the driver is for his own benefit and profit, without the knowledge, consent or participation of the original carrier, and, while on his way to deliver the freight he is hauling for his own benefit, the driver negligently causes an accident, the original carrier is *not* liable for his conduct, even though the accident occurs on a road upon which the driver would be traveling had he not departed from the original carrier's instructions." (Emphasis added.)

See, also, *McDougall* v. *Glenn Cartage Co.* (1959), 169 Ohio St. 522, 9 O.O. 2d 12, 160 N.E. 2d 266, paragraph three of the syllabus ("Where a commercial motor truck, bearing the name and distinctive markings of a certified transportation company engaged in the common carriage of goods, with a list under such name of ICC and PUCO permits and numbers, * * * and collides with another vehicle, a rebuttable presumption or an inference arises not only that such truck belonged to the one whose name and markings it carried but also that it was being operated on his business at the time of the collision."). In *Thornberry*, the driver had completed a delivery for the lessee and was instructed to return to the lessee's place of business. After unloading the freight, however, the driver contracted with a third party and hauled an unauthorized load for his own benefit without the knowledge or consent of the lessee. While committing the frolic and detour, the driver negligently caused an accident. The court decided that the lessee was not liable for the negligence of the driver because the unauthorized trip was a deviation and departure from the scope of the lessee's business. *Id.* at paragraph three of the syllabus.

In applying *Thornberry, supra,* the United States Sixth Circuit Court of Appeals, in *Wilcox* v. *Transamerican Freight Lines, Inc.* (C.A.6, 1967), 371 F. 2d 403, certiorari denied (1967), 387 U.S. 931, rejected the assertion that I.C.C. regulations fix absolute liability upon the lessee. Instead, the court held: "In our opinion, the I.C.C. regulations do not impose a liability on a carrier using leased equipment greater than that when operating its own equipment. Under Ohio law, liability of an owner [or lessee] of a motor vehicle for the acts of his employee, is governed by the principle of respondeat superior. * * *" (Citation omitted.) *Id.* at 404. Thus, the accepted position in Ohio rejects the imposition of strict liability on carrier-lessees and allows the presumption created by the I.C.C. regulations to be rebutted by applying *respondeat superior* concepts and showing that the driver was not acting within the scope of his employment with the lessee at the time of the accident.

The majority of this court in raising the irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of the vehicle states that applying a strict construction of the I.C.C. regulations does a better job of advancing the interests of the public at large, by requiring carrier-lessee trucking companies to scrupulously enforce safety standards on their leased vehicles. I fail to see what public policy rationale the majority is using to overrule thirty-six years of precedent. There is no showing in this case that absolute liability placed upon carrier-lessees creates increased safety awareness and implementation. Further, the record is silent as to how this public policy measure would change the outcome in this case.

The majority does concede that the carrier-lessee may seek contribution

and/or indemnity from other potentially responsible parties, but it ignores the fact that complete liability has already been attached, as a matter of law, to the carrier-lessee. Therefore, the carrier-lessee which has been found liable *per se* must choose among other potentially liable parties, whose solvency is questionable, in order to seek redress for liability it otherwise would not incur under an appropriate *respondeat superior* analysis.

Accordingly, for the reasons expressed above, I would affirm the judgment of the court of appeals.