**BALEZ–PIERCE**

v.

**PRICE AND BOYCE, INC. d.b.a. Price Brothers Trucking;**

**Transport Insurance Company, Appellant;**

**Insurance Company of the State of Pennsylvania, Appellee.**

[Cite as *Balez–Pierce v. Price & Boyce, Inc.* (1993), 86 Ohio App.3d 119.]

Court of Appeals of Ohio,
Licking County.

No. 92–CA–75.

Decided Feb. 1, 1993.

*Ronald B. Lee* and *Lee A. Schaffer,* for appellant Transport Insurance Company.

*Marlin J. Harper, J. Stephen Teetor* and *David E. Ballard,* for appellee Insurance Company of the State of Pennsylvania.

SMART, Presiding Judge.

On or about April 18, 1990, Linda Balez–Pierce, who is not a party to this appeal, was injured when her vehicle collided with a truck tractor owned by appellee Price & Boyce, Inc. d.b.a. Price Brothers Trucking ("Price")[1] and driven by appellee Donald Wedge ("Wedge"), who worked for Price. Price had permanently leased the tractor to Able Transit, Inc. ("Able"). Able's insurer is appellant Transport Insurance Company ("Transport"). Price's insurer is appellee the Insurance Company of the State of Pennsylvania ("ISOP").

Linda Balez–Pierce brought her complaint against Price and Wedge to assert her claim for personal injury. Price and Wedge filed a third-party complaint for declaratory judgment against Able's insurer, Transport. After a flurry of cross-claims and counter-claims, Transport eventually settled Linda Balez–Pierce's claim for $125,000. Thereafter, the issue for the trial court and before us is whether Transport can recover some or all of that $125,000 from ISOP. The trial court concluded that Transport, with its commercial liability policy on Able, is primarily responsible for indemnification and defense of the defendants, not ISOP with its business automobile insurance policy on Price.

Transport's statement of the issues presented asserts that the trial court's judgment was inappropriate on the undisputed facts. See Loc.App.R. 4(D).

At the time of the accident the tractor displayed the Able placard but was not pulling a trailer. Wedge had earlier left the loaded trailer containing Able's freight and had driven to his home to shower, eat, and transact other personal business. The collision with Linda Balez–Pierce occurred as Wedge was returning to the truck stop to retrieve the trailer.

---

1. Because of the complexities of this litigation including a complaint, cross-claims, counter-claims and two third-party complaints, we omit the designation of the parties as they appeared before the trial court. Instead, we will merely recap the procedural history of the case as it pertains to the issues presented herein.

Transport assigns two errors to the trial court:

"I. The trial court committed prejudicial error when it granted the Price/ISOP motion for summary judgment holding that Transport was primarily liable for the Balez–Pierce action.

"II. The trial court's ruling is unconstitutional."

## I

The lease contract between Able and Price required Price to obtain and pay for insurance coverage for its equipment when it was not being operated in the service of Able, and Price secured the ISOP policy for that purpose.

Transport urges that nontrucking insurance (such as that known as "bobtail" insurance *i.e.,* for a tractor without a trailer) is designed to meet the insurance requirements when a truck is not hauling freight. The contract between Price and Able also required Price to carry bobtail insurance with respect to public liability and property damage.

The trial court relied on *Wyckoff Trucking, Inc. v. Marsh Bro. Trucking Service, Inc.* (1991), 58 Ohio St.3d 261, 569 N.E.2d 1049. In *Wyckoff,* the Supreme Court held in the syllabus:

"1. In tort causes of action involving leased vehicles of interstate motor carriers, primary liability shall be determined with regard to Interstate Commerce Commission regulations rather than the common-law doctrines of *respondeat superior,* master-servant, independent contractor and the like. (*Thornberry v. Oyler Bros., Inc.* [1955], 164 Ohio St. 395, 58 O.O. 189, 131 N.E.2d 383, overruled to the extent inconsistent herewith.)

"2. In order for liability to attach on an interstate carrier-lessee under Interstate Commerce Commission regulations, it must be established that, at the time the cause of action arose, (1) a lease of the vehicle was in effect and (2) the vehicle displayed the carrier-lessee's placard listing its I.C.C. numbers. (Section 1057.12, Title 49, C.F.R., applied.)

"3. Section 1057.12(c)(1), Title 49 C.F.R. creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the I.C.C. Identification numbers of the carrier-lessee."

In *Wyckoff,* as here, the injured party was struck by a tractor-trailer rig owned by Wyckoff and leased to Rogers. To make matters more complex, Rogers tripleased to other carriers when it did not need the rig. At the time of the accident, the driver of the rig had just completed a delivery for Rogers and was en route to pick up a load for another party. The *Wyckoff* court sorted out the liability among the various potential tortfeasors and the injured party.

Pursuant to the syllabus in *Wyckoff,* Wedge is irrebutably resumed to be employed by Able because (1) the lease was in effect and (2) the tractor displayed Able's placard listing its I.C.C. numbers. Thus, following *Wyckoff,* Able and its insurer Transport are liable to Linda Balez–Pierce, or any other member of the public, for damages. The *Wyckoff* opinion clearly articulates the policy rationale promoted herein. It states, at 58 Ohio St.3d at 266, 569 N.E.2d at 1053:

" * * * Strict construction of the I.C.C. regulations will compel the carrier-lessee trucking company that displays its I.C.C. placards on the leased truck to scrupulously enforce safety standards on its leased vehicles, which are, by statutory definition, within its exclusive control, especially in light of the spectre of liability. Above all, the majority view removes factual confusion attendant to determining which party is responsible for damages, thus relieving the innocent victim from the sometimes interminable delays that accompany multiple-party litigation, by focusing liability as it does, and forcing the trucking companies to allocate the various indemnification agreements among themselves. Once liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnification from other potentially responsible parties, not the innocent victim."

Certainly the logic of *Wyckoff's* public policy arguments requires us to take this one step further. *Wyckoff* assigns liability to Able for Linda Balez–Pierce. *Wyckoff* does not preclude Able's insurer, Transport, from seeking contribution from ISOP pursuant to the contract. To the contrary, the above-quoted language and the final result of *Wyckoff*[2] mandate that we reverse the trial court's determination.

We find that *Wyckoff* allocates responsibility as it applies to the public. It does not affect the interpretation of any contracts among the various parties-defendant. Pursuant to the contract between the parties ISOP is liable to Able for this accident. The first assignment of error is sustained.

## II

In *Cuyahoga Falls v. Bowers* (1984), 9 Ohio St.3d 148, 151, 9 OBR 438, 441, 459 N.E.2d 532, 535, the Supreme Court reiterated its rule not to decide constitutional questions unless absolutely necessary. See, also, *Dupler v. Mansfield News Journal* (1980), 64 Ohio St.2d 116, 18 O.O.3d 354, 413 N.E.2d 1187.

In light of the above, as well as the disposition of assignment of error number one, we do not reach this assignment of error.

---

**2.** A remand for determination of contribution and indemnification rights among the parties. *Wyckoff* at 267, 569 N.E.2d at 1054.

The second assignment of error is overruled as moot.

For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

MILLIGAN and GWIN, JJ., concur.