OPINION
{¶ 1} Appellant Travelers Property Casualty ("Travelers") appeals the decision of the Muskingum County Court of Common Pleas that found in favor of Appellee State Farm Mutual Automobile Insurance Company ("State Farm") and ordered Travelers to reimburse State Farm in the amount of $100,000 and pay an additional $700,000 to the family of the decedent John G. Nester, Jr. The following facts give rise to this appeal.
{¶ 2} On December 3, 1998, Paul and Jessie Gill, partners in a trucking business known as Gill Trucking, purchased a 1987 Mack tractor and a 1985 East trailer from MC Transport. Kenny Marsh and Jeff Crum owned MC Transport. At the time of the purchase, Paul Gill and his son-in-law inspected the tractor-trailer and were satisfied with its condition. Approximately eight months prior to the Gills' purchase of the tractor-trailer, MC Transport conducted an annual inspection on the tractor. The inspection report indicated no problems with the brakes.
{¶ 3} Following their purchase of the tractor-trailer, the Gills entered into an Equipment Lease Agreement and leased the tractor-trailer to NTC. The lease agreement contained the following provisions concerning control and responsibility of the tractor-trailer:
 {¶ 4} 2. Responsibility. INDEPENDENT CONTRACTOR leases EQUIPMENT unto CARRIER for CARRIER'S use, but only to the extent necessary to comply with applicable state and federal law. INDEPENDENT CONTRACTOR agrees to furnish to CARRIER a complete transportation service from origin to destination that is accepted by INDEPENDENT CONTRACTOR. * * *
* * *
 {¶ 5} 8. Operator of Equipment. Subject to CARRIER'S obligation to comply with federal, state or provincial regulations, drivers, helpers, or other employees engaged by INDEPENDENT CONTRACTOR in the performance of INDEPENDENT CONTRACTOR'S obligations under this agreement shall be solely under the control and direction of INDEPENDENT CONTRACTOR, and CARRIER shall have no right to direct or control the hiring, discharge of such employees or the manner or means of performing duties for INDEPENDENT CONTRACTOR, nor shall CARRIER have any responsibility for their compensation, taxes, reports, and obligations relating to their employment with INDEPENDENT CONTRACTOR * * *.
* * *
 {¶ 6} 13. Inspection of EQUIPMENT. INDEPENDENT CONTRACTOR warrants that EQUIPMENT is complete with all required accessories and is in good, safe, and efficient operating condition and shall be so maintained at INDEPENDENT CONTRACTOR'S expense through the duration of this lease. * * *
* * *
 {¶ 7} 15. Costs of Operation. INDEPENDENT CONTRACTOR shall pay all costs of operation of EQUIPMENT including, but not limited to: * * * maintenance costs, lubricants, tires, including changing and/or repair, batteries and other accessories, wages and remuneration of operators, drivers, and helpers, public liability and property damages insurance, payments for injury or damage to operator, driver and helpers and to EQUIPMENT, whether the same occur while the EQUIPMENT is being operated in the services of CARRIER or otherwise, worker's compensation, unemployment insurance, social security or other similar taxes, insurance or benefits on operators, drivers, or helpers * * *.
* * *
 {¶ 8} 16. INDEPENDENT CONTRACTOR will not, for any purpose, whatsoever, act or propose to act as an agent, representative, or employee of CARRIER.
{¶ 9} Throughout the duration of the lease, possession of the tractor-trailer remained with the Gills and their driver, Gregory Yerian. Pursuant to the lease agreement, the Gills purchased full coverage insurance, for the tractor-trailer, from State Farm. NTC also had insurance on the tractor-trailer through Travelers.
{¶ 10} One or two weeks prior to the accident, Yerian informed the Gills that the tractor-trailer had brake problems. According to Yerian, the brakes felt "spongy." NTC was not notified of the brake problem. Paul Gill authorized Yerian to take the tractor-trailer to Haga 
Sons to have the brakes repaired and Yerian did so on February 18, 1999. Yerian told Jeffrey Haga, Sr. that a shoe fell apart on one of the brakes on the trailer. Yerian did not ask Haga to perform any brake work on the tractor. Haga replaced a couple tires on the tractor and Yerian drove it home and left the trailer, at Haga Sons, so the brake work could be completed.
{¶ 11} On February 24, 1999, the date of the accident, Yerian was hauling coal between St. Clairesville and the AEP generating plant in Conesville. On his third run of the day, as Yerian descended a hill he downshifted into seventh gear. Yerian tapped the brakes at the top of the hill and they worked. However, half way down the hill when he applied the brakes they allegedly did not work and the tractor-trailer began gaining speed. When Yerian applied the brakes just before the accident they allegedly felt "spongy." The trailer jerked and the tractor-trailer rolled over onto its side, went left of center and struck John Nester, Jr.'s tractor-trailer killing him.
{¶ 12} Following Nester's death, Nester's estate filed a wrongful death action. State Farm filed a separate lawsuit pertaining to the coverage issue. The trial court consolidated the two lawsuits. Prior to the commencement of a bench trial on October 1, 2001, Nester's estate settled the wrongful death claim and Travelers and State Farm each advanced the estate $100,000. On November 30, 2001, the trial court issued findings of fact and conclusions of law in which it ordered Travelers to reimburse State Farm in the amount of $100,000, for its advance to the Nester family, and pay the additional $700,000 to the Nester family.
{¶ 13} Travelers timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 14} "I. THE TRIAL COURT ERRED IN NOT DETERMINING THAT THE GILLS WERE NEGLIGENT AND THAT SUCH NEGLIGENCE WAS THE CAUSE OF THE ACCIDENT."
 {¶ 15} "II. THE TRIAL COURT ERRED IN DETERMINING THAT THE GILLS WERE `INSUREDS' UNDER THE TRAVELERS POLICY."
 {¶ 16} "III. THE TRIAL COURT ERRED IN FAILING TO DETERMINE THAT THE STATE FARM POLICY PROVIDED PRIMARY INSURANCE COVERAGE FOR THE OCCURRENCE."
 {¶ 17} "IV. THE TRIAL COURT ERRED BY DETERMINING THAT NEITHER NICOLOZAKES NOR TRAVELERS HAD A RIGHT TO INDEMNIFICATION OR CONTRIBUTION."
 I
{¶ 18} In its first assignment of error, Travelers maintains the trial court erred when it found, "[t]he cause of the accident was a combination of unsafe speed, operating in too high a gear precluding downshifting and a failure to apply the brakes until the vehicle was well into the curve which could not be negotiated. * * *" Findings of Fact at paragraph ten. We disagree.
{¶ 19} In support of this assignment of error, Travelers maintains that Paul and Jessie Gill's failure to properly maintain the tractor-trailer in a safe operating condition was the cause of the accident between Yerian and Nester. We previously determined, in a related case, Case No. CT2001-0065, that the trial court's decision that Yerian's negligence caused the accident was not against the manifest weight of the evidence. Accordingly, we conclude the Gills' failure to maintain the tractor-trailer was not the cause of the accident.
{¶ 20} Travelers' first assignment of error is overruled.
 II
{¶ 21} Travelers contends, in its second assignment of error, the trial court erred when it determined the Gills were insureds under the Travelers policy. We will not address the merits of this assignment of error since we have previously determined that the Gills were not negligent and therefore, it is irrelevant whether they are insureds under the Travelers policy.
{¶ 22} Travelers second assignment of error is overruled.
 III
{¶ 23} In its third assignment of error, Travelers contends the trial court erred when it found that State Farm provided secondary insurance coverage for the occurrence. We disagree.
{¶ 24} This assignment of error challenges the third paragraph of the trial court's conclusions of law, which provides:
 {¶ 25} "The Travelers Insurance policy duly filed and in effect on the date of the accident killing Nester was the primary policy in effect on the date and time in question. * * * Gills' State Farm policy of insurance duly filed and in effect on February 24, 1999 was the secondary policy in effect on said date and time."
{¶ 26} In support of this assignment of error, Travelers cites the Ohio Supreme Court's decision in Motorists Mut. Ins. Co. v.Lumbermens Mut. Ins. Co. (1965), 1 Ohio St.2d 105, syllabus, which held:
 {¶ 27} "Where one insurer insures against a loss and provides that it shall not be liable for a greater proportion of the loss than the applicable limit of liability stated in its declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, and another insurer insures against the same loss and additionally provides that such insurance shall be excess insurance over any other valid and collectible insurance available to its insured, effect should be given to the latter provision, and the first insurer should be held to be the primary insurer."
{¶ 28} Travelers maintains the Lumbermens case applies to the case sub judice because the "other insurance" provision contained in the State Farm policy is a "pro rata clause," which provides that when other liability coverage is available State Farm will pay "the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident." However, the Travelers policy provides that it is "excess over any other collectible insurance" for any covered vehicle not owned by NTC.
{¶ 29} Travelers also contends the Ohio Supreme Court's decision in Wyckoff Trucking, Inc. v. Marsh Bros. Serv., Inc. (1991),58 Ohio St.3d 261 does not apply to the facts of this case because theWyckoff case only applies to an interstate carrier-lessee under Interstate Commerce Commission ("I.C.C.") regulations and only when, at the time of the accident, a lease of the vehicle was in effect and the vehicle displayed the carrier-lessee's placard listing its I.C.C. numbers. Travelers argues the evidence at trial established that the tractor-trailer was used only in intrastate transportation and the tractor-trailer did not display a placard displaying NTC's I.C.C. numbers.
{¶ 30} In addressing the above authorities, Travelers ignores the statutory authority, contained in R.C. 2307.34(A)(3) and (4) that specifically addresses the issue of "primary insurer" and "secondary insurer" in the context of motor carrier liability as to leased motor vehicles. Pursuant to the statutory definitions, Travelers is the "primary insurer" and State Farm is the "secondary insurer." Sections (A)(3) and (4) provide as follows:
 {¶ 31} "(3) `Primary insurer,' as used in relation to the operation of a leased motor vehicle, means an insurance company authorized to do business in this state that issues or delivers a policy of motor vehicle liability insurance to a motor carrier [NTC] authorized by the public utilities commission to conduct operations in this state."
 {¶ 32} "(4) `Secondary insurer,' as used in relation to the operation of a leased motor vehicle, means an insurance company authorized to do business in this state that issues or delivers a policy of motor vehicle liability insurance to the owner [Gills] of a motor vehicle leased to a motor carrier authorized by the public utilities commission to conduct operations in this state."
{¶ 33} Travelers contends R.C. 2307.34(A)(3) and (4) do not apply in this case because these sections of the statute only apply when both policies provide coverage for a loss and the Travelers policy does not provide coverage for the loss which occurred by Gills' negligent failure to maintain the tractor-trailer in safe working order. We find Travelers argument lacks merit because the language contained in the statute does not provide that it only applies when both policies provide coverage. Further, the loss in this case was not caused by the Gills' negligence, but rather the negligence of Yerian, who was insured under the Travelers policy. Accordingly, the trial court properly found Travelers to be the "primary insurer."
{¶ 34} Travelers third assignment of error is overruled.
 IV
{¶ 35} In its fourth assignment of error, Travelers maintains the trial court erred by determining that neither NTC nor Travelers had a right to indemnification or contribution. We disagree.
{¶ 36} We previously addressed this issue in a related case, Case No. CT2001-0065, and held that NTC was not entitled to contribution pursuant to R.C. 2307.34(B) because NTC was not displaying the proper identification placards at the time of the accident and the accident did not occur while Yerian was involved in a "nontrucking activity." Further, having determined in Travelers first assignment of error that the Gills' negligence did not contribute to the accident, Travelers is precluded from seeking indemnification or contribution.
{¶ 37} Travelers fourth assignment of error is overruled.
{¶ 38} For the foregoing reasons, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed.
By: WISE, J. HOFFMAN, P.J., and GWIN, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.
Costs assessed to Travelers.