OPINION
{¶ 1} Plaintiffs-appellants, Cincinnati Insurance Company ("CIC") and Sewell Motor Express, appeal a declaratory judgment from the Clinton County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Jay Stacey and Certain Underwriters at Lloyd's, London ("Lloyd's"). *Page 2 
 I. FACTS {¶ 2} Appellant Sewell is an authorized motor carrier incorporated under Ohio law, engaged in the business of transporting property for hire via owned and leased commercial vehicles. About 40 percent of Sewell's drivers are independent contractors who lease their equipment to Sewell. Sewell has a contract with DHL to drive various "flights" between DHL locations and the DHL hub located at the Wilmington Airborne Airpark. In 2003, Sewell and appellee Jay Stacey entered into a lease agreement for Stacey to drive three flights; including the flight at issue in the instant case, flight 6827. Under flight 6827, every Monday through Friday, Stacey hauls a trailer from DHL in Sharonville to the Wilmington Airpark.
 {¶ 3} In 2005, Sewell and Stacey entered into a lease for a new Freightliner tractor. Under the terms of the agreement, Stacey owned the Freightliner and leased the vehicle to Sewell, a common arrangement in the commercial trucking industry. Appellant CIC sold a liability insurance policy to Sewell which covered Sewell's leased vehicles. Additionally, Stacey purchased a liability insurance policy from appellee Lloyd's for times when the vehicle is not being operated in the service of Sewell as required by the lease. The parties refer to the policy provided by Lloyd's as a "bobtail" policy. "Bobtailing" is a term commonly used in the trucking industry to refer to a trailerless commercial vehicle.
 {¶ 4} On August 28, 2006, while en route to Sharonville to pick up the DHL trailer to perform flight 6827, Stacey struck a motorcycle driven by David Driscoll at the intersection of U.S. 22/S.R. 3 and North Clarksville Road in Warren County. Driscoll died as a result. At the time of the accident, the Freightliner was trailerless and displaying Sewell's P.U.C.O. placards.
 {¶ 5} Appellants, Sewell and CIC, filed a declaratory judgment action claiming no duty to defend or indemnify Stacey for the accident. Appellees counterclaimed, arguing that Stacey was in service of Sewell at the time of the accident, appellants had the primary *Page 3 
insurance coverage obligation, and were barred from seeking contribution or indemnification. Following discovery, both sides filed opposing motions for summary judgment. The trial court granted summary judgment in favor of appellees; finding that appellants were responsible for defending Stacey for any civil liability from the accident and that appellants have no right to indemnity or contribution. Appellants timely appeal, raising a single assignment of error:
 {¶ 6} "STACEY WAS AN INDEPENDENT CONTRACTOR ENGAGED IN NONTRUCKING ACTIVITY, AND NOT `IN THE SERVICE OF' OR `FURTHERING THE BUSINESS OF' SEWELL."
 II. STANDARD OF REVIEW {¶ 7} Appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ. R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt, 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of [his] pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E).
 III. MOTOR CARRIER LIABILITY {¶ 8} This case is a classic dispute among competing insurance providers in the *Page 4 
trucking industry. See Carolina Cas. Ins. Co. v. Insurance Co. of NorthAmerica (C.A.3, 1979), 595 F.2d 128, 129-130. In their sole assignment of error, appellants present multiple arguments claiming that the trial court erred by granting summary judgment in favor of appellees. In this case, both parties conflate three distinct concepts common among insurance cases: 1) duty to defend; 2) indemnity; and 3) contribution. In their argument, appellants mostly focus on the relationship between Stacey and Sewell; claiming that Stacey was an independent contractor, not in the service of Sewell at the time of the accident because the Freightliner was "bobtailing" at the time of the accident, and, as a result, the "bobtail" policy obligates Lloyd's to provide primary defense and indemnification for the accident.
 A. Duty to Defend {¶ 9} The arguments presented by both sides in this case center around the Ohio Supreme Court decision in Wyckoff Trucking, Inc. v. Marsh Bros.Trucking Service, Inc. (1991), 58 Ohio St.3d 261. Appellees urge thatWyckoff is controlling. The trial court in this case agreed, relying onWyckoff in its final decision. Appellants, on the other hand, claim thatWyckoff is inapplicable.
 {¶ 10} In Wyckoff, the Ohio Supreme Court examined the competing approaches used to determine responsibility among insurers in interstate trucking negligence cases. Under the minority view, carrier liability is determined by common-law respondeat superior analysis. Id. at 265. In contrast, the majority view holds that federal motor carrier regulations create an irrebuttable presumption of statutory employment, requiring the motor carrier to provide primary coverage for the accident. Id.
 {¶ 11} In Wyckoff, the Ohio Supreme Court adopted the majority view, holding in interstate trucking insurance disputes that, (1) a valid lease and (2) the vehicle involved in the accident displays the motor carrier's placard numbers, creates an irrebuttable presumption of *Page 5 
statutory employment between the motor carrier and the driver of the vehicle and, as a result, the carrier-lessee is responsible for any resulting accidents. Id. at paragraphs 2 and 3 of the syllabus.[1]
 {¶ 12} The stated rationale for the court's bright-line rule was that "[a]bove all, the majority view removes factual confusion attendant to determining which party is responsible for damages, thus relieving the innocent victim from the sometimes interminable delays that accompany multiple-party litigation, by focusing liability as it does, and forcing the trucking companies to allocate the various indemnification agreements among themselves. Once liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnification from other potentially responsible parties, not the innocent victim." Id. at 266.
 {¶ 13} Appellants urge that Wycoff is inapplicable to the case at bar and that the minority view of common-law respondeat superior analysis should determine the duty to defend. Appellants argue that theWycoff rule only serves the narrow purpose of "protecting innocent, third-party victims," not resolving disputes among insurers. Further, appellants attempt to distinguish Wycoff by claiming that the public policy concerns expressed in Wycoff are absent in this case since the victim is not a party to the instant declaratory judgment action. Finally, appellants argue that the Wycoff presumption was statutorily overruled by changes to the federal regulations and the enactment of R.C. 2307.34.
 {¶ 14} In support, appellants rely upon this court's decisions inRoseberry v. Balboa (1993), 90 Ohio App.3d 33; and Lakes v. Minor
(1993), 86 Ohio App.3d 386. In Roseberry, the lessor-driver of a commercial vehicle, Roseberry, went on a "run" for lessee-carrier, SSD *Page 6 
Distribution. 90 Ohio App.3d at 34. Samuel Grewe, a friend, accompanied Roseberry on the trip. Id. Roseberry picked up a loaded trailer for Avon Products in Springdale, Ohio and drove it to Perrysburg, Ohio. Id. at 35. They then returned the empty trailer to Avon and, thereafter, drove the truck to a nearby bar where each "consumed several beers over a short period of time." Id. Upon leaving the bar, Roseberry accepted Grewe's offer to drive the vehicle back to Middletown. Id. While driving, Grewe hit a utility pole. Id. Roseberry filed a suit against Grewe and was awarded a judgment of $24,500 for his injuries. Id. Roseberry attempted to recover the damage award from Balboa, the issuer of the bobtail policy purchased by Roseberry. Id. Balboa refused to satisfy the judgment and Roseberry filed a complaint against Balboa seeking a declaration that he was covered under the bobtail policy. Id. The trial court granted Roseberry's motion for summary judgment and required Balboa to satisfy the judgment. Id.
 {¶ 15} On appeal, Balboa claimed that since the truck was under lease to SSD and displayed SSD's identification numbers at the time of the accident, SSD was the statutory employer pursuant to the Wycoff
presumption. Id. at 36. This court refused to follow Wycoff, finding that "the irrebuttable presumption set forth in Wycoff was intended for the benefit of the public at large, not for the driver of the leased vehicle." Id.
 {¶ 16} Similarly, in Lakes, a licensed operator of a commercial vehicle was injured in an accident while the vehicle was being driven by an unauthorized driver. 86 Ohio App.3d at 389. Like Roseberry, this court refused to apply the Wycoff presumption in Lakes because the appellant was not "among those persons intended to be protected." Id. at 391.
 {¶ 17} Appellants' reliance on Roseberry and Lakes is improper.Roseberry and Lakes are limited to factual situations where the owner/operator, an inside party knowledgeable of the relationships between the insurers, is seeking coverage for his or her own injuries and the public policy concern expressed in Wycoff is absent. TheRoseberry court acknowledged this *Page 7 
distinguishing factor, noting that the owner-operator is not a member of the protected class identified in Wycoff because an owner-operator is "in a position to determine the relationships among the various parties to the lease and to determine who is potentially liable."90 Ohio App.3d at 36, citing Lakes.
 {¶ 18} Despite appellants' claims, the underlying public policy concern expressed in Wycoff is present in the case at bar. Appellants attempt to support their argument by aptly noting that the injured party, David Driscoll, is absent from the instant case. However, appellants clearly filed this declaratory judgment action in anticipation of a lawsuit filed by Driscoll's estate to determine which party has the duty to defend. The intent of Wycoff is to prevent delay and protect third-party victims by creating a rule which allows the injured party to seek recovery in a timely fashion without having to wait for insurance companies to determine responsibly, such as the case at bar. 58 Ohio St.3d at 266.
 {¶ 19} The facts of the present case are strikingly similar toCincinnati Ins. Co. v. Haack (1997), 125 Ohio App.3d 183. A glaring omission from appellants' brief is any mention of Haack, a case relied upon by the trial court and extensively cited by appellees at both the trial level and in the instant appeal.
 {¶ 20} In Haack, operating under a similar lease agreement, the motor carrier company, Hageman, dispatched the truck, owned by Bradley Fugate and driven by Fugate's licensed driver David Haack, to haul a load of dirt. Id. at 186. When Haack arrived at the site, Hageman's dispatcher informed Haack that the job had been cancelled and the truck should be returned to Hageman. Id. On the return trip, Haack collided with a pickup truck owned by Marcotte Landscaping. Id. Haack was initially cited for making an illegal lane change, causing the accident. Id. However, Haack contested the citation and the court ultimately dismissed it. Id. Hageman and the owner of the pickup truck, Marcotte, were both insured by Cincinnati Insurance. Id. at 185. Fugate insured his truck through Continental National *Page 8 
Indemnity. Id. Marcotte filed a claim with Cincinnati Insurance. Id. at 186. Cincinnati Insurance paid the claim and, in exchange, became subrogated to Marcotte's claim against Haack and Fugate for the accident. Id. Cincinnati Insurance then filed a complaint against Haack and Fugate to seek recovery for the payments made to Marcotte. Id. Cincinnati Insurance, as insurer for Hageman, then moved to intervene, seeking a declaratory judgment as to whether it had a duty to defend Fugate and Haack under Hageman's insurance policy. Id. at 187. Continental, as Fugate's insurance carrier, was also made a party to the suit. Id. Essentially, like the case at bar, the contest was to determine which insurance carrier bears responsibility for Fugate's truck. Id.
 {¶ 21} In Haack, the Second Appellate District conducted a comprehensive analysis of motor carrier liability includingWycoff. The Second District concluded based on Wycoff. that Hageman, and Cincinnati Insurance as the insurer, were statutorily presumed to be responsible for the leased truck and driver since a valid lease was in existence and the lessee's P.U.C.O. placard was adorning the window of the leased truck. Id. at 209.
 {¶ 22} Like Haack, Stacey was not in the process of hauling freight at the time of the accident with the only distinguishing fact being that Stacey was en route to pick up a load, while Haack was returning from a job. There is no reason to change the outcome of this case based upon this variation. In this case, it is undisputed that appellants' P.U.C.O. placards were present on the vehicle; however, in their brief, appellants dispute the validity of the lease between the parties. After a review of the record, we find no support for appellants' claim and agree with the trial court that a valid lease was in effect.
 {¶ 23} Further, we find no authority for appellants' claims that Ohio courts have abandoned Wycoff or that the presumption declared inWycoff has been overruled by federal law or R.C. 2307.34.
 {¶ 24} Appellants note a change in the federal regulation cited inWycoff. Specifically, *Page 9 
the addition of subsection (4) to former Section 1057.12(c), Title 29, C. F.R.[2] in 1992 following the Wycoff decision. However, Ohio courts continue to follow the Wycoff presumption, such as the Second District did in Haack. See, also, Canal Insurance Co. v. Brogan (1994),93 Ohio App.3d 765. Additionally, other jurisdictions following the majority view continue to adhere to the presumption of statutory employment following this amendment. See Willamson v. Steco Sales, Inc. (1995), 191 Wis.2d 608.
 {¶ 25} Finally, we address appellants' claim that R.C. 2307.34
extinguishes Wycoff's applicability. R.C. 2307.34 controls contribution actions in commercial trucking insurance disputes, not which insurer must provide defense. Although the section does not affect the duty to defend, the provisions of R.C. 2307.34 are wholly consistent and supportWycoff.
 {¶ 26} Specifically, R.C. 2307.34 defines "primary insurer" in relation to the operation of a leased motor vehicle as "an insurance company authorized to do business in this state that issues or delivers a policy of motor vehicle liability insurance to a motor carrier authorized by the public utilities commission to conduct operations in this state." R.C. 2307.34(A)(3). "Secondary insurer" is defined as "an insurance company authorized to do business in this state that issues or delivers a policy of motor vehicle liability insurance to the owner of a motor vehicle leased to a motor carrier authorized by the public utilities commission to conduct operations in this state." R.C. 2307.34(A)(4).
 {¶ 27} Statutorily defining the motor carrier's insurer as the "primary insurer" is clearly consistent with the Wycoff presumption. Further, R.C. 2307.34(B) incorporates the Wycoff standard into the evidentiary burden required for a contribution cause of action; specifically, that the vehicle displays the identification placards of the motor carrier and that the motor carrier entered into a lease agreement with the owner of the vehicle. R.C. 2307.34(B)(1) and *Page 10 
(2); see, also, Haack at 202-203 (finding that R.C. 2307.34 codifies theWycoff presumption).
 {¶ 28} Appellants' focus on the respondeat superior analysis is meaningless. Wycoff clearly fixes the duty to defend upon CIC. CIC is the primary insurer and bears the duty to defend.
 B. Indemnity {¶ 29} The second issue for review is whether appellees must indemnify appellants from liability. Indemnity arises through contract, either express or implied. Four Seasons Environmental, Inc. v. WestfieldCos. (1994), 93 Ohio App.3d 157, 159. Indemnity does not extinguish a party's duty to defend or pay a judgment. Rather, indemnity allows the party who has been compelled to defend or pay a judgment to seek complete reimbursement from the party that should have paid. Id.
 {¶ 30} Appellants contend that the contractual provisions of the insurance policies require Lloyd's to provide primary coverage based upon indemnity. Appellants claim that since Stacey was trailerless at the time of the accident, the "bobtail" policy supplied by Lloyd's must provide primary coverage and indemnifies CIC from its duty to defend. Essentially, appellants believe that the various lease agreements and insurance parties signed among the parties contract around theWycoff presumption and shift the duty among the insurers through contract. Vessels, The Lessor of Two Evils: Presumption of Responsibility for Motor Carrier Lessees or Common Law Respondeat Superior (2003), 30 Tran.L.J. 213, 216.
 {¶ 31} Based upon various policy and contractual principles, we disagree. Stacey falls within the definition of "insured" within the CIC policy. Similarly, the insurance policy issued to Stacey by Lloyd's provides coverage during business and non-business uses while "the tractor unit is not attached to a trailer." Lloyd's, however, excludes coverage while the vehicle is "engaged in the business use of carrying or hauling property of any person or entity other than the insured" and "while used in the business of any person or entity to whom the *Page 11 
automobile is rented or hired."
 {¶ 32} Further, the lease agreement between Stacey and Sewell provides that Sewell is responsible for paying the costs of liability "for the protection of the public as required by applicable laws and regulations." Stacey is responsible for providing insurance coverage while the vehicle is "not being operated in the service of" Sewell.
 {¶ 33} There may be some overlap in coverage based upon the differing standards used in the Lloyd's policy in comparison to the exclusion provided in the lease. Nevertheless, we need not address whether the vehicle was being operated "in the service of" or "in the business of" Sewell because the "applicable law," as defined in Wycoff, requires the motor carrier to provide a defense in this case. Under the terms of policies, both may provide coverage in this situation. For better or worse though, the bright-line rule established in Wycoff unequivocally resolves this dispute to protect the pubic and prevent a delay in recovery for injured third parties.
 {¶ 34} Moreover, regardless of whether overlap exists, it is not for appellants' benefit. Neither Sewell nor CIC are parties to the Lloyd's policy. As such, the Lloyd's policy should not absolve CIC's duty whenWycoff requires CIC to provide primary coverage for Stacey's accident.
 {¶ 35} The Second District addressed a similar argument inHaack. 125 Ohio App.3d at 201. As the Haack court explained,Wycoff requires the motor carrier to provide coverage when the presumption is met regardless of whether the policies overlap in coverage. Id. Accordingly, the Lloyd's policy does not indemnify CIC for defending the action.
 C. Contribution {¶ 36} In this case, the trial court found that based on the provisions of R.C. 2307.34, "CIC is not entitled to seek contribution * * * against Stacy [sic] or Stacy's [sic] insurer, because Stacey was operating the Freightliner truck for commercial benefit of Sewell at the *Page 12 
time of the accident, and therefore Stacey was `in the service of Sewell at the time of the accident and not engaged in a `nontrucking activity.'" Appellants urge on appeal that they are entitled to contribution.
 {¶ 37} Once again we are guided by Wycoff; specifically, the court's statement that "once liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnification from other potentially responsible parties, not the innocent victim."58 Ohio St.3d at 266.
 {¶ 38} Wycoff provides that the statutory employer should seek contribution "once liability is fixed." We interpret this statement to require that the motor carrier and insurance company that is required to defend the action must wait until liability has been established through a final judgment, including an award of damages, or a settlement. Similarly, the owner-lessor and nondefending insurer should not seek a judgment denying contribution due to the same uncertainty. Until a final judgment or settlement has been reached, the motor carrier has not yet been found liable for the accident, nor is the amount owed to the injured party certain. Without this finality, it is unclear whether appellants would even need contribution.
 {¶ 39} The trial court's finding in this case is premature. Clearly, the trial court again followed the Haack decision, finding that appellants had no right to seek contribution. But in Haack, Cincinnati Insurance had already settled the claim before bringing suit against the competing insurer. 125 Ohio App.3d at 186.
 {¶ 40} Accordingly, the trial court improperly held that Sewell and CIC could not seek contribution because such a determination is not ripe for review until liability has been established. These premature actions lead to unnecessary litigation and further delay an innocent injured party's reimbursement and recovery.
 {¶ 41} We sustain the assignment of error in part regarding the trial court's finding that *Page 13 
appellants are not entitled to seek contribution. However, we express no position as to whether or not appellants are entitled to contribution. In all other respects, the assignment of error is overruled and the trial court's judgment affirmed.
 {¶ 42} Judgment affirmed in part, reversed in part, and modified in accordance with this opinion.
BRESSLER, P.J., and POWELL, J., concur.
[1] We note that Wycoff was decided pursuant to I.C.C. regulations, Section 1057.12(c), Title 49, C.F.R. The I.C.C. was abolished in 1995 and the regulation relied upon by the Wycoff court is not longer in existence. However, a similar provision, with virtually identical language, was re-codified at Section 376.12(c), Title 49, C.F.R.
[2] Now re-codified at Section 376.12(c)(4), Title 49, C.F.R. *Page 1